**Susan B. LONG and Philip H. Long, Plaintiffs-Appellants,**

v.

**UNITED STATES INTERNAL REVENUE SERVICE, Defendant-Appellee.**

**No. 76–3734.**

United States Court of Appeals, Ninth Circuit.

May 2, 1979.

American Civil Liberties Union, Stephen K. Strong, Seattle, Wash., for plaintiffs-appellants.

Richard W. Perkins, Murray S. Horwitz (argued), Washington, D.C., for defendant-appellee.

Before KOELSCH and KENNEDY, Circuit Judges, and JAMESON,* District Judge.

KENNEDY, Circuit Judge:

This case comes as an appeal from the district court's granting of appellee's motion for partial summary judgment by which appellants were denied access to certain information they seek under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. Appellants request all the information the IRS has compiled in the Taxpayer Compliance Measurement Program (TCMP). TCMP is a continuing series of statistical studies by the IRS on a national scale to measure the level of compliance with federal tax laws.

The IRS has disclosed all statistical tabulations based on the TCMP.[1] The primary issue on appeal is whether TCMP source material must also be disclosed. This source material is in the form of check sheets and data tapes. Check sheets are the underlying documents from which TCMP statistics and conclusions are derived. Each check sheet contains information from an individual taxpayer's tax return and includes the taxpayer's name, address, social security number, and all the financial data reported on the return. A check sheet also contains additional information obtained by audit of the return. The computer data tapes contain the same information as the check sheets, with the exception of the taxpayer's name and address. Appellants state they are interested primarily in the data tapes; they seek individual check sheets only where necessary to interpret the tapes. Appellants do not seek the identities of individual taxpayers, and they request that identifying information be deleted both from the tapes and the check sheets.

We dispose at the outset of any contention that computer tapes are not gener-

---

\* Honorable William J. Jameson, United States District Judge for the District of Montana, sitting by designation.

1. Although the tabulation material sought by the Longs has been released, they argue that the district court should have granted a permanent injunction against further withholding of this information. This issue is discussed later in this opinion.

ally within the FOIA. The district court apparently determined that the term "records," as used in the Act, does not include computer tapes. This conclusion, however, is quite at odds with the purpose and history of the statute. The Senate Report which accompanied the 1974 amendments to the FOIA expressly considered special problems of computer records in the context of search and copying fees. S.Rep.No.854, 93rd Cong., 2d Sess. 12 (1974). Moreover, the Treasury Department's FOIA regulations make explicit provision for disclosure of "records maintained in computerized form." 31 C.F.R. § 1.5(f) & 1.6(g)(3)(ii) (1977). In view of the common, widespread use of computers by government agencies for information storage and processing, any interpretation of the FOIA which limits its application to conventional written documents contradicts the "general philosophy of full agency disclosure" which Congress intended to establish. S.Rep.No.813, 89th Cong., 1st Sess. 3 (1965). We conclude that the FOIA applies to computer tapes to the same extent it applies to any other documents. *Cf. Save the Dolphins v. United States Department of Commerce*, 404 F.Supp. 407, 410–11 (N.D.Cal.1975) (ordering disclosure of nonexempt portions of a motion picture); *see also SDC Development Corp. v. Mathews*, 542 F.2d 1116 (9th Cir. 1976) (holding that computer materials for library reference are exempt but basing the ruling solely on the nature of the information contained in the tapes.)

More difficult is the IRS argument that TCMP source information is protected from disclosure under exemption 3 of the Act, which provides the FOIA does not apply to matters that are:

> (3) specifically exempted from disclosure by statute . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria

for withholding or refers to particular types of matters to be withheld . . .[2]

Exemption 3 necessarily requires reference to some other statute, and the IRS relies primarily on 26 U.S.C. § 6103, which provides detailed rules for the disclosure of tax "returns" and "return information." The IRS argues that the tapes and check sheets are return information, prohibited from disclosure by section 6103 except where that section so allows. Appellants reply that the source data does not constitute "return information" as defined by section 6103 and point to what the parties call the "Haskell amendment," which provides that "return information" does not include data in a form which "cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer." 26 U.S.C. § 6103(b)(2). Appellants argue that they seek information with the taxpayers' identities deleted and that so edited the data are not "return information" as defined by the statute.

The district court, applying the predecessor to the current section 6103, held the source information exempt from disclosure even if names, addresses, and social security numbers are deleted. The court held further that whether or not removal of the identifying information would take the material outside the scope of section 6103, the IRS had no duty to remove the identifying material to bring it within the FOIA.

Turning first to the obligation of the agency to edit the materials, we cannot agree with the district court. The FOIA requires that "[a]ny reasonably segregable portion" of a requested record must be revealed "after deletion of the portions which are exempt." 5 U.S.C. § 552(b). *See* 31 C.F.R. § 1.2(c)(3) (1977). The district court, relying primarily on Chief Justice Burger's dissent in *Department of the Air Force v. Rose*, 425 U.S. 352, 385, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976) and on *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 162, 95 S.Ct.

**2.** This is the version of exemption 3 now in effect. This section and 26 U.S.C. § 6103, discussed *infra*, were amended after the district court's decision. All parties agree, however,

that the current versions apply. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 165, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975).

1504, 44 L.Ed.2d 29 (1975), concluded that the process of deleting identifying information would result in the creation of a whole new record and that therefore segregation of the material was not required. We do not believe, however, that the mere deletion of names, addresses, and social security numbers results in the agency's creating a whole new record. The facts here are very different from the *Sears* case. There, the issue was whether agencies were required to explain the meaning of the phrase "in the circumstances of this case" and to provide all the documents on which they relied as showing the circumstances of the case. The Supreme Court held that the FOIA does not require agencies to create records that did not previously exist. Requiring an agency to write an opinion upon request is far different, however, from requiring it to excise a name or social security number from an existing record. *Rose* does not support the IRS position either. The reasoning of the majority opinion in that case leads us to conclude that the editing required here is not considered an unreasonable burden to place on an agency. *Rose* concerned records of disciplinary proceedings at the Military Academy and sensitive questions of privacy were involved. Although the district court in that case was required to determine on remand whether the deletion of personal references would be sufficient to safeguard privacy, the majority apparently rejected the argument that such editing could not be required because it was too burdensome.

The district court in the present case concluded that the deletion of identifying information would be so expensive that the IRS was relieved of its duty imposed by the FOIA to segregate revealable information. Noting that the IRS had estimated the total cost of editing and reproducing all the check sheets and tapes to be about $160,000, the court held that "the magnitude of time and expense required to 'sanitize' the TCMP source material prior to disclosure is a mat-

ter of law unreasonable." Record, vol. III, at 862.

As an initial matter, we note the $160,000 is the estimated cost for editing and reproduction. Both the FOIA and Treasury regulations permit a fee to be charged for the cost of record search and reproduction, so the IRS will not bear the costs attributable to these functions. 31 C.F.R. § 1.6(g)(1)(i) & (ii), (g)(3)(ii) (1977). Moreover, the most significant portion of the $160,000 expense figure, about $150,000, is the estimate for editing and reproducing all of the 200,000 check sheets. Appellants have indicated, however, that they do not seek all or even most of the check sheets. They are primarily interested in the computer tapes and only seek the check sheets where there is a problem with interpretation of the tapes.

Even after these appropriate adjustments have been made, a very difficult question remains of whether the cost and inconvenience to the agency attributable to the editing process can be the sole basis for determining that material is not reasonably segregable. Treasury regulations define "reasonably segregable portions" to be "any portion of the record which is not exempt . . . and which after deletion of the exempt material still conveys meaningful and nonmisleading information." 31 C.F.R. § 1.2(c)(3) (1977). These regulations make no reference to cost or convenience as a relevant factor in the determination.

■ Additional insights on this question can be derived from the 1974 amendments to the FOIA dealing with fees, which provides that agencies can only charge for the direct costs of search and duplication. Pub. L.No.93–502, 88 Stat. 1561 (codified at 5 U.S.C. § 552(a)(4)(A)). As a result of this amendment, the Treasury Department adopted a new FOIA fee regulation which states that "under no circumstances will a fee be charged for . . . deleting exempt matter . . . ." 31 C.F.R. § 1.6(a)(1) (1977).[3] The legislative history

---

**3.** The Longs, in arguing that the $160,000 cost estimate relied on by the district was too high, contend that the regulations do permit requesters to be charged the cost of deleting informa-

tion from computer records. *See* 31 C.F.R. § 1.6(g)(3)(ii) (1977). We do not reach this issue.

indicates that the intent of the amendment was so that "fees should not be used for the purpose of discouraging requests for information as or obstacles to disclosure of requested information." S.Rep.No.1200, 93rd Cong., 2d Sess. (1974); [1974] U.S.Code Cong. & Ad.News 6267, 6287. The clear implication of this is that the agencies are expected to bear the cost of editing. It can be argued with some persuasiveness that, while Congress intended that agencies would bear substantial costs in processing FOIA requests, it did not intend to foreclose the possibility that at some point the costs of segregation might be so extreme that the request would have to be dismissed as unreasonable. We do not reach the issue, for in this case the costs of editing are not so high that segregation is unreasonable.

In order to put this matter in perspective, it is useful to note how costly the FOIA can be generally for agencies. In 1976, the FBI assigned 191 full-time employees to the sole task of processing its FOIA requests, *see Open America v. Watergate Special Prosecution Force*, 178 U.S.App.D.C. 308, 316, 547 F.2d 605, 613 (1976), and that agency estimated that in 1977 the cost to it alone of complying with the FOIA would be $2,675,-000. *See id.* 178 U.S.App.D.C. at 315, 547 F.2d at 612. In one case Judge Green of the United States District Court for the District of Columbia ordered the Justice Department to comply within three months to a FOIA request from the son of Julius and Ethel Rosenberg for information concerning the trial and execution of his parents. *Meeropol v. Levi*, No. 75–1121 (D.D.C. order issued Aug. 27, 1975). Compliance with that order required the agency to assign 65 full-time and 21 part-time employees solely to processing that one request. *See Open America*, 178 U.S.App. D.C. at 316 n.15, 547 F.2d at 613 n.15. Despite the massive expenses that can be involved in even a single request, Congress has not limited access under the Act. Whether such expenditures are good policy is not a question for us to decide. Congress has determined that access to government records is an important objective. We therefore cannot conclude that the costs of editing involved in this case are so extreme that segregation of revealable material is unreasonable as a matter of law.

■ Some further problems remain. First the IRS states that even without names and social security numbers, there is a risk of indirect identification. We agree with the IRS that more facts are necessary to decide this point, and we remand for the district court to determine whether disclosure of TCMP source data entails a significant risk of indirect identification. We note that with respect to the tax model, there is a similar risk that disclosure of the information will permit indirect identification, yet the administrative practice of the Revenue Service has been to release such information. In evaluating the degree of the risk of disclosure from TCMP source material, it will be helpful to compare the risk that the IRS has found acceptable with respect to the tax model.

The second argument of the IRS is that a requirement to disclose the edited data would be a significant extension of the duty to disclose under the law prior to the Haskell amendment and that it was not the intent of the amendment to effect such changes. While we are prepared to agree that the history of the amendment reveals an intent not to increase the reach of the FOIA, that observation is helpful only if it is reasonably clear what Congress perceived the law under the FOIA to be when it adopted the amendment.

The IRS asserts that the purpose of the Haskell amendment was to permit disclosure only for those records which, under IRS practice at that time, were being disclosed. The sole support for this interpretation is a comment by Senator Haskell that, "the addition by the Internal Revenue Service of easily deletable identifying information to the type of statistical study or compilation of data which under its current practice, has been subject to disclosure, will

not prevent disclosure . . . ." 122 Cong.Rec. S12606 (daily ed., July 27, 1976). This comment was directed solely to whether the IRS could evade its obligations by adding information. We do not interpret it to indicate that the amendment was intended simply as a codification of the existing IRS practice.[4]

The IRS poses a difficult question directed to a possible contradiction within section 6103 regarding the definition of "return information." The statutory device used by the Haskell amendment is to define return information so that it does not include data that identifies a taxpayer. 26 U.S.C. § 6103(b)(2). But, by implication, the provisions of the statute pertaining to congressional disclosure make a distinction between return information of two kinds, return information that identifies and return information that does not.[5] 26 U.S.C. § 6103(f)(1) & (2); see also id. § 6103(f)(4)(A) & (f)(4)(B). The IRS thus contends that the mandate of section 6103 not to disclose "return information" may extend to returns which do not identify individual taxpayers, notwithstanding the Haskell amendment. We agree that the implication the IRS advances is quite reasonable, but it nevertheless does not resolve

this case, because we are left with two sections that are flatly inconsistent. Therefore, we must decide whether the definition of "return information" is controlled by the explicit language of the Haskell amendment, contained in the definitional subsection itself, or by an implication drawn from another subsection. Given the choice between adopting the explicit language of one section and an inconsistent implication of another, we chose the explicit language, particularly where, as here, it is consistent with the overall purpose of the Act. The explicit provision is section 6103(b), and by its terms data that do not identify is disclosable. As noted, it is the clear purpose of section 6103 to protect the privacy of taxpayers. At the same time the amendment demonstrates a purpose to permit the disclosure of compilations of useful data in circumstances which do not pose serious risks of a privacy breach. Our reading of the statute implements these dual purposes. Appellee's reading, on the other hand, would prevent the disclosure of useful information even when there is no threat to taxpayer privacy.[6]

The IRS also points to section 6108 which requires the Secretary to prepare and disclose statistical studies and compilations. It

4. Even if we were to accept the IRS argument that the Haskell amendment was simply intended to freeze the status quo, neither our research or that of the parties reveals any case deciding whether, under the law existing prior to the Haskell amendment, audit results which were not identified to particular taxpayers were open to FOIA disclosure. We do note that even with respect to the question of the availability of audit information identified to a particular taxpayer there was a split in the cases, with two district courts holding that it was unavailable, *Kirk, Jr. v. First Nat'l Bank*, 38 A.F.T.R.2d 76–5718 (N.D.Ga. Aug. 27, 1976); *Glickman, Lurie, Eiger & Co. v. IRS*, 36 A.F.T. R.2d 6111 (D.Minn. Oct. 14, 1975), and a third holding in dicta that it could be revealed, *B & C Tire Co. v. IRS*, 376 F.Supp. 708, 711–12 (N.D. Ala.1974). It was not clear then and it is not clear now whether the data in question would have been available under the previous language of section 6103 and the FOIA. We cannot presume to say with assurance what Congress understood about the scope of the FOIA with reference to this information at the time they debated the amendment.

5. Subsection (f)(1) of section 6103 provides that on written request, from the chairman of any of several congressional committees, the Secretary shall furnish the committee with

any return or return information specified in such request, except that any return or return information which can be associated with, or otherwise identify, directly or indirectly, a particular taxpayer shall be furnished to such committee only when sitting in closed executive session unless such taxpayer otherwise consents in writing to such disclosure.

6. Some useful information which does not identify particular taxpayers may nonetheless be exempt from disclosure under the FOIA by virtue of some other exemption. For example, exemption 7(E) permits withholding of investigating records compiled for law enforcement purposes which disclose investigative techniques and procedures. However, in this case the IRS has not raised any other exemptions which might prevent disclosure of this information.

notes that section 6108(c) contains language identical to the amendment, providing that no study shall be disclosed if it identifies a particular taxpayer. It argues that section 6108 demonstrates that the amendment to section 6103 was directed at statistical studies and not the source data sought in this case. We do not find it necessary to interpret the reach of section 6108. It suffices to note that the Haskell amendment permits disclosure of the tax model, which is a collection of source data similar to the source material for TCMP.

 The district court after considering the interests of the plaintiffs and the public in disclosure, concluded that equity did not favor disclosure.[7] *See Theriault v. United States*, 503 F.2d 390, 392 (9th Cir. 1974). The court reasoned that what was really important were the statistical tabulations previously disclosed, not the raw data, because it was only from the statistical summary that the effectiveness of the IRS could be evaluated. This conclusion is valid only if we assume that the IRS statistics encompass every useful analytic conclusion that could be drawn from the information. We find no evidence in the record to support that proposition. With respect to the tax model the IRS will either supply statistical tabulations from the data base or it will supply the source data itself, apparently recognizing the value of a researcher's doing his own analyses. The TCMP is similar. Neither party disputes that the information to be derived from the TCMP is extremely useful in formulating tax policy and in evaluating current practices. We cannot say the source data will be irrelevant to such evaluations.

The district court did not point to any public harm which will result from disclosure, other than the expense and inconvenience involved. We believe that in view of the usefulness of the information, the strong congressional policy favoring disclosure, and the apparent congressional willingness to impose substantial costs on agencies in the interest of public access to information, the costs and inconvenience in this case are not alone sufficient to require nondisclosure.

Appellants raise two final matters. First, they contend that the trial court erred in failing to state that certain records originally sought by appellants and later released by the IRS are not exempt and in failing to enjoin the IRS from further violations. Appellants note that at oral argument on the motion for summary judgment, counsel for the IRS agreed to a stipulation that the materials made available were not exempt and to an injunction against further withholding of those or similar materials. The Longs prepared an order in accordance with the stipulation and noted it for hearing without objection. The order, however, was never entered and the district court in its final disposition granted a dismissal, believing that there remained no genuine issue of material fact. The Longs contend that the IRS has had a past history of violating the FOIA, and point in particular to the difficulty they have had in securing these and other materials. There is no indication in the opinion of the district court that it considered this problem. Therefore, on remand, we request the district court to consider whether in light of all the circumstances including the apparent concession by counsel for the IRS that the records are not exempt, Record, vol. IV, at 1065, *see Consumers Union of United States, Inc. v. Veterans Admin.*, 436 F.2d 1363, 1365–66 (2d Cir. 1971), an injunction is appropriate.

 Finally, appellants request an award for costs and attorney fees. As to costs incurred at the district court level, that is a matter which must first be ruled on by the district court and about which we express no opinion. Rule 39(a) of the Federal Rules of Appellate Procedure provides that where the judgment is vacated, costs

---

7. We note that in *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 143 n.10, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975), the Supreme Court made clear that an individual's rights under the FOIA are neither increased nor decreased by reason of the nature of his particular interest in the sought documents. The Act is designed to inform the public and it is the public interest which determines whether documents are exempt.

of appeal shall be awarded only if ordered by the court. In addition, rule 39(b) provides that costs can be awarded against the United States if "authorized by law." The authorization for the assessing of costs and attorney fees derives from 5 U.S.C. § 552(a)(4)(E) which permits an award where the complainant "has substantially prevailed." The legislative history indicates that the award of attorney fees was not intended to be automatic. Courts are expected to consider the benefit to the public derived from the case, the commercial benefit to the complainant, the nature of the complainant's interest in the records, and whether the government withholding of the records has a reasonable basis in law. S.Rep.No.1200, 93d Cong., 2d Sess. (1974); [1974] U.S.Code Cong. & Ad.News 6267, 6288. These matters are also appropriate for resolution by the district court after further proceedings.

Judgment vacated and case remanded.