**Sharon L. KING, Plaintiff-Appellee,**

v.

**INTERNAL REVENUE SERVICE and Jerome Kurtz, Commissioner of Internal Revenue, Defendants-Appellants.**

Nos. 81–2137, 81–3081.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 20, 1982.

Decided Sept. 10, 1982.*

---

* Because this opinion creates a conflict with the opinions of the Ninth and District of Columbia Circuits in *Long v. I. R. S.*, 596 F.2d 362 (9th Cir. 1979), *cert. denied*, 446 U.S. 917, 100 S.Ct. 1851, 64 L.Ed.2d 271 (1980), and *Neufeld v. I. R. S.*, 646 F.2d 661 (D.C.Cir.1981), it was circulated under Circuit Rule 16(e) to all active judges, with the exception of Circuit Judge Cudahy, who did not participate in consideration of the opinion. No judge requested a rehearing *en banc*.

Stephen Gray, Atty., Glenn L. Archer, Jr., Asst. Atty. Gen., Michael J. Paup, Chief Appt. Sec., Tax Div., Dept. of Justice, Washington, D. C., for defendants-appellants.

James A. Fletcher, Isham, Lincoln & Beale, Chicago, Ill., for plaintiff-appellee.

Before PELL, Circuit Judge, FAIRCHILD, Senior Circuit Judge, and GORDON, District Judge.**

** Myron L. Gordon, District Judge of the Eastern District of Wisconsin, is sitting by designa-

PELL, Circuit Judge.

This is an appeal from the District Court's grant of summary judgment ordering the Internal Revenue Service to disclose eight redacted documents to the plaintiff under the Freedom of Information Act, 5 U.S.C. § 552 (1976) (FOIA). The question presented is whether the District Court erred in holding that the documents must be released to the plaintiff after the deletion of taxpayer-identifying material. The I.R.S. contends that the court erred in its interpretation of the term "return information," as defined in I.R.C. § 6103(b)(2), when it ordered that the documents were disclosable after the deletion of such material; and further contends that the provisions of section 6103 embody the exclusive standard for releasing return information, without regard to the provisions of the FOIA.

I.

This litigation arises from three FOIA requests the plaintiff made upon the I.R.S. in 1978 and 1979. Those requests sought data, memoranda, and background information relating to or commenting on certain revenue rulings and regulations which had been issued by the Service on various subjects, including classification of utility trucks; treatment of expenditures for repair, maintenance, rehabilitation or improvement of property; and changes in methods of depreciation. The I.R.S. eventually released some, but not all, of the requested documents. The plaintiff thereafter filed suit seeking access to the remaining 102 documents.

The parties filed cross-motions for summary judgment. The I.R.S. claimed that most of the documents sought were exempt under FOIA § 552(b)(5), and that the eight documents at issue here were exempt under I.R.C. § 6103, or alternatively, FOIA § 552(b)(3). The District Court found six-

tion.

ty-eight of the documents exempt in their entirety under FOIA section (b)(5), but ordered that thirty-four of the documents, including the eight now at issue, be released either in whole or in part. The I.R.S. appealed only from that portion of the order relating to the eight documents for which exemption was claimed under I.R.C. § 6103, and has released all the others to the plaintiff.[1] The eight documents at issue in this appeal consist of:

    (a) two taxpayer protests of I.R.S. agents' audit reports;

    (b) a transmittal letter and a portion of an audit;

    (c) a form setting forth adjustments to a taxpayer's return and the reasons therefor;

    (d) a form stating a specific taxpayer's liability by period, the amount of adjustments and the reasons therefor;

    (e) two I.R.S. intra-office memoranda requesting information on a specific taxpayer; and

    (f) a letter from the I.R.S. to a taxpayer asking the taxpayer to alter its method of accounting.

## II.

We turn first to the determination of the proper definition of the term "return information," as used in I.R.C. § 6103(b)(2), and then to consideration of the extent to which the documents at issue here fall within that definition.

### A. Return Information

Section 6103(b)(2) of the Internal Revenue Code provides:

    (2) Return information.—The term "return information" means—

      (A) a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense, and

      (B) any part of any written determination or any background file document relating to such written determination (as such terms are defined in section 6110(b)) which is not open to public inspection under section 6110,

but such term does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer.

The primary area of dispute here is over the language of the so-called Haskell Amendment, a portion of the Tax Reform Act of 1976, which added the proviso "but such term [return information] does not include data in a form which cannot be associated with, or otherwise identify, either directly or indirectly, a particular taxpayer." The district court construed this provision as meaning that "return information . . . includes only information that directly or indirectly identifies a particular taxpayer." The court further held that after deletion of "identifying matter," documents which would otherwise constitute return information are disclosable under the FOIA. The I.R.S. contends that the district court erred

---

1.  Appeal number 81-2137 relates to the release of the eight documents discussed in the opinion. Appeal number 81 3081 was consolidated with that appeal by order of the court on January 18, 1982, following a joint motion for consolidation. It concerns an additional document, an internal memorandum of the I.R.S., which the taxpayer received with one paragraph deleted. The I.R.S. resisted disclosure of that paragraph on the same grounds as in 81–2137. In accordance with the stipulation of the parties and this court's order, the decision of the court in 81–2137 as set forth in the opinion above also controls in 81 -3081, and is therefore fully dispositive of both appeals.

in its interpretation, and that for a document containing data listed in subsection (b)(2)(A) to be disclosable, the Haskell Amendment requires (1) that the information be in a different form, i.e., amalgamated with other data to form statistical compilations or tabulations; and, (2) not be associated with or otherwise directly or indirectly identify a specific taxpayer. We turn to an evaluation of the statutory language and context as well as the relevant legislative history to find which interpretation is more in keeping with Congress' intent in enacting section 6103(b)(2).

1. The Statute

The relevant portion of section 6103(b)(2) begins by stating, in subsection (A), that return information means not only a taxpayer's identity, but also an extensive catalog of specific items of information as well as "any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return .... " There is no doubt that this highly inclusive definition guarantees privacy to a very broad spectrum of taxpayer information, and would include all the items of information sought by the plaintiff, but for the language of the Haskell Amendment.

The language of the amendment first provides that return information does not include "data *in a form*" which cannot be associated with or identify a particular taxpayer. It is from this language that the I.R.S. derives its argument that the statute provides for the release of such data only if it is changed in form, by amalgamation with data from other taxpayers to form statistical tabulations or studies. The plaintiff contends that this reads the language of the amendment too narrowly, and that only identifying information is exempt from disclosure.

We note initially that the construction urged by the plaintiff and adopted by the district court essentially reads the words "in a form" out of the statute. It is a basic principle of statutory construction that "[c]ourts have no right, in the guise of construction of an act, to either add words

to or eliminate words from the language used by congress." *DeSoto Securities Co. v. Commissioner*, 235 F.2d 409, 411 (7th Cir. 1956), and that a statute should not be construed in a way that renders portions or phrases superfluous. We further note that adoption of the simple "identity test" urged by the plaintiff would render superfluous the detailed catalog of protected data listed in subsection (b)(2)(A). If Congress had intended only taxpayer-identifying information to be exempt, it could have achieved that result with a much simpler statute specifying merely that all non-identifying information is disclosable. Congress chose not to go that route. *See Cliff v. I. R. S.*, 496 F.Supp. 568, 574 (S.D.N.Y.1980).

The statute continues with the words "which cannot be *associated with*, or *otherwise identify, directly or indirectly*, a particular taxpayer." Despite the apparent breadth of this formulation, the plaintiff's construction equates "associated with," and "identify, directly or indirectly." Again, we are renitent to construe the statute so as to render its language redundant or superfluous. Indeed, it might be persuasively argued that information which pertains only to a particular taxpayer, and is not changed in form by amalgamation, is always "associated with ... a particular taxpayer." But we need not adopt that extreme position to be persuaded that information which might not on its face identify a taxpayer might well be associated with a taxpayer by an FOIA requester who knows sufficient extrinsic facts (about a competitor, for instance) to draft a request in a manner sufficiently narrow to produce information which could only pertain to that taxpayer. In this case, for example, one of the documents sought contains photographs of utility trucks. Even if the taxpayer's name is deleted from the photographs, the industry discussed in the documents here is sufficiently specialized that the plaintiff might well be able to deduce from the photos which taxpayer's return has been disclosed. Allowing the determination by the district court on an ad hoc basis of whether an FOIA requester has sufficient data to make such an association would substantially un-

dercut the protective purpose of section 6103(b)(2). The district court, like the I.R.S., cannot be aware of how much information the requester already possesses to facilitate the association.

The broader statutory context also provides support for the I.R.S.' contention that return information is not limited merely to taxpayer-identifying information. Section 6103(f)(1) provides:

(f) Disclosure to Committees of Congress.—

(1) Committee on Ways and Means, Committee on Finance, and Joint Committee on Taxation.—Upon written request from the chairman of the Committee on Ways and Means of the House of Representatives, the chairman of the Committee on Finance of the Senate, or the chairman of the Joint Committee on Taxation, the Secretary shall furnish such committee with any return or return information specified in such request, except that any return or return information which can be associated with, or otherwise identify, directly or indirectly, a particular taxpayer shall be furnished to such committee only when sitting in closed executive session unless such taxpayer otherwise consents in writing to such disclosure.

This provision clearly contemplates two types of return information: identifying, which is available to Congress only in closed session, and non-identifying, which is available to Congress on request. The provision on access to non-identifying return information makes it clear that the definition of that term is broader than that urged by the plaintiff. Congress itself felt it needed statutory authorization to obtain access to non-identifying return information. This provision would be superfluous if—as King suggests—such information were already publicly available on request. We are aware that this reliance on the provisions of section 6103(f)(1) was rejected by the Court

of Appeals for the Ninth Circuit in *Long v. I. R. S.*, 596 F.2d 362, 368 (9th Cir. 1979), *cert. denied*, 446 U.S. 917, 100 S.Ct. 1851, 64 L.Ed.2d 271 (1980), which stated:

we must decide whether the definition of "return information" is controlled by the explicit language of the Haskell amendment, contained in the definitional subsection itself, or by an implication drawn from another subsection [6103(f)(1)]. Given the choice between adopting the explicit language of one section and an inconsistent implication of another, we chose the explicit language, particularly where, as here, it is consistent with the overall purpose of the Act. The explicit provision is section 6103(b) and by its terms data that do not identify is [sic] disclosable.

*Id.* at 368. The *Long* decision, which has since been overruled by statute,[2] Act of Aug. 13, 1981, Pub.L.No.97–34, Title VII, § 701(a), 95 Stat. 340 (1981), was based on the erroneous premise that the explicit language of section 6103(b)(2) provided only an identity test for the release of return information. See further discussion of *Long, infra*. As detailed above, we reject the notion that the express language of the statute is so limited, and we therefore dismiss the *Long* court's unpersuasive interpretation of the effect of section 6103(f)(1).

■ We conclude, therefore, that the express language of the statute and the broader statutory context are more consistent with the interpretation of section 6103(b)(2) urged by the I.R.S.

**2. The Legislative History**

What scant legislative history there is on the Haskell Amendment further supports the I.R.S.' contention that its import was to allow only the release of statistical compilations. The sole legislative history coming to our attention is contained in Senator Haskell's remarks on the purpose of the Amendment:

---

**2.** While conceding that the purpose and effect of the 1981 amendment is to bar the release of the information sought by the *Long* plaintiffs, King contends that the reasoning or rationale

of that decision is not affected. Our conclusion that *Long* was wrongly decided makes it unnecessary to reach the merits of that proposition.

[t]he purpose of this amendment is to insure that statistical studies and other compilations of data now prepared by the Internal Revenue Service and disclosed by it to outside parties will continue to be subject to disclosure to the extent allowed under present law. Thus the Internal Revenue Service can continue to release for research purposes statistical studies and compilations of data, such as the tax model, which do not identify individual taxpayers.

The definition of "return information" was intended to neither enhance nor diminish access now obtainable under the Freedom of Information Act to statistical studies and compilations of data by the Internal Revenue Service. Thus, the addition by the Internal Revenue Service of easily deletable identifying information to the type of statistical study or compilation of data which, under its current practice, has been subject to disclosure, will not prevent disclosure of such study or compilation under the newly amended section 6103. In such an instance, the identifying information would be deleted and disclosure of the statistical study or compilation of data be made.

122 Cong.Rec. S24012 (1979). It is true, as the plaintiff points out, that this statement was made in the context of questioning as to whether the I.R.S. could evade its previously existing obligation to disclose statistical studies simply by adding identifying information, and is therefore not a comprehensive statement of the Amendment's purpose. The statement is, however, highly consistent with the I.R.S.' position in this court, and in no way provides any support for adoption of the plaintiff's "identity test."

We conclude, therefore, on the basis of the statutory language, the broader context of the statute, and the relevant legislative history, that section 6103(b)(2) "return information" protects from disclosure all non-amalgamated items listed in subsection (b)(2)(A), and that the Haskell Amendment provides only for the disclosure of statistical tabulations which are not associated with or do not identify particular taxpayers.

The plaintiff relies primarily on *Long v. I. R. S.*, 596 F.2d 362 (9th Cir. 1979), *cert. denied*, 446 U.S. 917, 100 S.Ct. 1851, 64 L.Ed.2d 271 (1980), and *Neufeld v. I. R. S.*, 646 F.2d 661 (D.C.Cir.1981), as well as the legislative history of a subsequent amendment to § 6103(b)(2), in support of its identity test reading of the Haskell Amendment. In *Long*, the plaintiff sought access to source material underlying statistical tabulations the I.R.S. had prepared in compiling the Taxpayer Compliance Measurement Program. The material was in the form of data tapes and check sheets. The check sheets contained information from individuals' tax returns, including the taxpayer's name, address, and social security number. The tapes contained the same information, with the deletion of the names and addresses. The Ninth Circuit relied on the FOIA presumption favoring disclosure, and determined that the source material should be released if no identification of a particular taxpayer posed a significant risk. It remanded the case to the District Court for determination of which information would have to be deleted from the check sheets so they could be released without identifying any taxpayers. *Neufeld* followed *Long* in adopting the identity test, but made no independent analysis. We reject the *Long* analysis, not only on the basis of our analysis of the proper meaning of the statute, above, but also because that court erred by importing the policies of the FOIA into the interpretation of § 6103, a statute whose privacy-protecting purpose is precisely the opposite of that of the FOIA. While FOIA analysis is the appropriate mode for determining whether *non*-return information is subject to disclosure, it is not germane to the determination whether given documents in fact constitute return information.

Furthermore, even under an FOIA analysis we find the *Long* court misapplied the test balancing the public interest in disclosure against the taxpayers' and the Government's need for protection. The *Long* court remarked:

The district court did not point to any public harm which will result from disclo-

sure, other than the expense and inconvenience involved. We believe that in view of the usefulness of the information, the strong congressional policy favoring disclosure, and the apparent congressional willingness to impose substantial costs on agencies in the interest of public access to information, the costs and inconvenience in this case are not alone sufficient to require nondisclosure.

596 F.2d at 369. This analysis completely overlooks the deleterious impact upon our voluntary system of tax payment which is likely to result if taxpayers know their private financial information is subject to exposure upon the mere striking of their names and addresses. We therefore reject the reasoning and result of *Long* and its progeny, in favor of our analysis outlined above.

The plaintiff also points to the legislative history of the 1981 amendment to § 6103(b)(2), which was enacted for the purpose of overruling the *Long* result. The committee report which accompanied that legislation discussed § 6103 as follows:

> Present law restricts the disclosure of tax returns and return information. However, information that cannot identify any particular taxpayer is not protected under the disclosure restrictions. Because of this, questions have been raised concerning whether the IRS can legally refuse to disclose information which is used to develop standards for auditing tax returns.
>
> The House Bill provides that nothing in the tax law, or in any other Federal law, will be construed to require the disclosure of standards used, or to be used, for the selection of returns for examination . . . , if the Secretary determines that such disclosure will seriously impair assessment, collection, or enforcement under the internal revenue laws. However, it is intended that nothing in this provision be construed to limit disclosure of statistical data or other information . . . to the extent permitted under present law. Thus any information that is currently made available will continue to be available.

H.R.Rep. 97–215, 97th Cong., 1st Sess. 264, *reprinted in* [1981] U.S.Code Cong. & Ad. News 105, 285, 352–53. We are unable to draw from these comments the inference that Congress intended to affirm the "identity test" interpretation of § 6103. The comments, read in context, do not affirm the correctness of the very decision Congress was repudiating, but rather merely state that the rest of § 6103 is not changed by the amendment. What marginal relevance this legislative history possesses in fact cuts against the plaintiff's interpretation. By reiterating that statistical data and other non-return information will remain available to the extent of prior law, the Committee Report creates the negative implication that non-statistical data and return information were protected under prior law, and remain so under the 1981 amendment.

We find, therefore, that the trial court erred in adopting the *Long-Neufeld* identity test as the proper definition of return information. We turn, therefore, to the determination whether the eight documents properly fall within the scope of the correct definition of return information, and the extent to which their release is governed by the provisions and policies of the FOIA.

### III.

#### A. Return Information

We believe it is quite clear that the eight documents at issue here constitute "return information," as defined by section 6103(b)(2). Each was generated with respect to the liability of a specific taxpayer. Each contains either private facts taken directly from tax returns or I.R.S. comment upon the private tax situations of specific taxpayers. None of the documents is changed by amalgamation with other return information to form statistical tabulations. We conclude, therefore, that the eight documents are return information within the definition of the statute.

#### B. Disclosure

Once it is established that the documents sought are return information, the further

question whether disclosure is controlled exclusively by section 6103 or by the FOIA presents itself. If section 6103 is the governing statute, reference to the policies of the FOIA is irrelevant; the segregability requirements of the FOIA are inapplicable; and the Secretary's decision is not subject to the FOIA strictures on burden of proof and standard of review in the district court.

The leading case on whether the FOIA or section 6103 governs release of return information is *Zale Corp. v. I. R. S.*, 481 F.Supp. 486 (D.D.C.1979). In a well-reasoned opinion, the court decided:

> Congress enacted the Tax Reform Act and its specifically crafted disclosure provision closely following its amendment to the general disclosure legislation of FOIA. Section 6103 propounds a comprehensive scheme for releasing information to discrete, identified requesting parties, including particular government officials, presidential designees, representatives of the taxpayer, and others with a material interest. It represents Congress' effort to strike a proper balance between a citizen's reasonable expectation of privacy, with attendant consequences for the continued vitality of our voluntary tax assessment system, and the government's need for return information in implementing effective tax administration. There is no indication from the statutory language that Congress was in any way concerned with promoting or protecting public disclosure of tax return data.

> The legislative proclamation of a rule of confidentiality with limited statutory exceptions constitutes a shift in emphasis from then existing law. Formerly the statute had identified tax returns as "public records"; their inspection was governed and restricted by a network of regulations and executive orders. At the same time, the secrecy of tax returns and related information has long been favored in practice, and it is not surprising that Congress would seek to carve out a special protection for this unique and highly sensitive type of information. This express purpose stands in sharp contrast to FOIA's stated preference for disclosure to the general public.

> In addition, the structure of section 6103 is replete with elaborate detail, identifying the discrete groups to whom disclosure of certain specified types of information is permissible. In this respect it differs markedly from the structure of FOIA, which calls for the release of information to the public at large with no showing of need required. Despite ample indication in the legislative history that Congress was aware of FOIA while it labored over the tax reform legislation, there is no evidence of an intention to allow that Act to negate, supersede, or otherwise frustrate the clear purpose and structure of § 6103. For a court to decide that the generalized strictures of FOIA take precedence over this subsequently enacted, particularized disclosure scheme would in effect render the tax reform provision an exercise in legislative futility. Absent an indication that Congress so intended, this Court will not imply such a prospective pre-emption by FOIA.

481 F.Supp. at 489 (footnotes and citations omitted). *Zale* has been widely followed in the district courts. *See, e.g., Green v. I. R. S.*, 47 A.F.T.R.2d 81–1261 (S.D.Ind.1981); *Kanter v. I. R. S.*, 45 A.F.T.R.2d 80–1676 (N.D.Ill.1980); *Anheuser-Busch, Inc. v. I. R. S.*, 493 F.Supp. 549, 550–51 (D.D.C.1980) (collecting cases). We are persuaded, by the *Zale* court's analysis, that any other construction would indeed render the enactment of section 6103 "a legislative futility." *Anheuser-Busch*, 493 F.Supp. at 551.

In *Tigar & Buffone, P. C. v. C. I. A.*, 47 A.F.T.R.2d 81–1310 (D.D.C.1981), another judge of the same district court disagreed with *Zale* without substantial analysis. *Tigar* was before the court on the plaintiff's motion to compel a *Vaughn* index, and it is clear that the court's concern was the possibility that the I.R.S. was withholding non-return information documents. The holding in *Tigar* is, therefore, not necessarily inconsistent with our conclusion that return information is not subject to the provisions

of the FOIA. To the extent, however, that the language of the *Tigar* decision may be read as repudiating the reasoning of *Zale* we find it unpersuasive. Our decision does not relieve the I.R.S. from the requirement of demonstrating that the decision to withhold documents is not arbitrary or capricious, *Zale*, 481 F.Supp. at 490, or that the documents withheld actually fall within the scope of section 6103.

Furthermore, even if we were to find that the documents were subject to the FOIA, they would be exempt from disclosure under exemption (b)(3), which permits withholding of matters specifically exempted from disclosure by statute, provided that the statute

> (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3). Section 6103 meets the statutory criteria of subsection (B). It establishes particular criteria for withholding information in subsections (b)—(*o*), and particular types of matters to be withheld in subsection (b)(2). It therefore falls within the exemption to the FOIA. *See Chamberlain v. Kurtz*, 589 F.2d 827 (5th Cir. 1979), *cert. denied*, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54; *Fruehauf Corp. v. I. R. S.*, 566 F.2d 574 (6th Cir. 1977).

We conclude that the provisions of section 6103 apply, either independently or through FOIA exemption (b)(3). A review of § 6103(e) reveals that the plaintiff does not fall within any of the categories of persons authorized to receive return information. Therefore the release of the documents was improperly ordered, and the I.R.S. did not abuse its discretion by withholding them. Therefore, and in accordance with all the foregoing reasons, the judgment appealed from is

REVERSED.