838 F.2d 899
 61 A.F.T.R.2d 88-508, 56 USLW 2446, 88-1
USTC P 9150
 Roland WIEMERSLAGE, V. James Grieco, James Onion, and
William L. Sundermeyer, Plaintiffs-Appellants,
v.
UNITED STATES of America, James Baker, Secretary of the
Treasury, and Lawrence Gibbs, Commissioner of the
Internal Revenue Service, Defendants-Appellees.
 No. 86-2665.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 15, 1987.
Decided Jan. 20, 1988.
 
 Gregory O'Duden, Nat. Treasury Employees Union, Washington, D.C., for plaintiffs-appellants.
 Robert A. Bernstein, Chief Appellate Sec., Tax Div., Washington, D.C., for defendants-appellees.
 Before WOOD, and RIPPLE, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.
 RIPPLE, Circuit Judge.
 
 
 1
 This case presents the question of whether the antidisclosure section of the Internal Revenue Code (the Code), 26 U.S.C. Sec. 6103, precludes the Internal Revenue Service (the IRS) from contracting out tax return processing functions. The appellants, residents of Illinois, request a declaratory judgment that the IRS illegally contracted out for processing certain estimated tax returns to a bank in Illinois. They also seek an injunction precluding any further farming out of their tax returns. Finally, the appellants seek monetary damages. In addressing the government's motion to dismiss the appellants' equitable claims, the district court, 633 F.Supp. 718, ruled that the Anti-Injunction Act of the Code, 26 U.S.C. Sec. 7421(a), and the federal tax exception to the Declaratory Judgment Act, 28 U.S.C. Sec. 2201(a), barred the injunctive and declaratory relief sought. The court later granted the government's motion for summary judgment on the damages claim by ruling on the merits of the case. Because the federal tax antidisclosure statute does not prevent the IRS from contracting out tax return processing functions, we affirm.
 
 
 2
 * Background
 
 A. Facts
 
 3
 In 1985, the appellants were required to file quarterly estimated federal income tax payments. They were required to mail their estimated tax returns and tax payments to a post office box leased by the First National Bank of Chicago (the Bank). The tax return form, form 1040-ES, requested the following four items of information: the amount of the payment, and the name, address and taxpayer identification number of the filer. In addition, for a taxpayer filing on a fiscal year basis, the 1040-ES form requested the month and year of the end of the applicable fiscal year.
 
 
 4
 Under the terms of a contract between the Bank and the United States Department of the Treasury, the employees of the Bank would perform the following daily procedure: empty the post office lockbox; scan the 1040-ES forms by machine (or, if not machine readable, encode the data by hand); microfilm the checks; note discrepancies between the amounts shown on the 1040-ES forms and the amounts of the accompanying checks; deposit the checks in an authorized account; log the checks in blocks of 100; and ship the 1040-ES forms, envelopes, log and magnetic scanning tape to the IRS service center for posting and processing. This tax collection procedure differs from the procedure used in other states where taxpayers mail estimated taxes directly to an IRS service center. At these service centers, IRS employees directly process all of the returns and remittances. The IRS implemented this Illinois lockbox depository program in an attempt to reduce the "flow" time on checks, thereby gaining substantial interest revenues for the United States. Wiemerslage v. United States, 633 F.Supp. 718, 719 (N.D.Ill.1986).
 
 B. Holding of the District Court
 
 5
 The district court, in a memorandum opinion dated May 1, 1986, held that injunctive relief was barred by the Anti-Injunction Act. In the district court's view, the prohibition of the Act "reaches not only those actions seeking to restrain the collection acts themselves, but also extends to all suits seeking to restrain any and all acts necessary or incident to the collection of taxes." Id. Therefore, held the court, it did not have the authority to restrain the IRS from proceeding with its chosen method of tax collection, an experiment designed to expedite the collection of taxes and to increase government revenues. The court recognized that the judicial restraint mandated by the Anti-Injunction Act is not absolute and that there is an equitable exception in extraordinary circumstances that allows a court to issue an injunction. However, to invoke this exception, said the court, a plaintiff has the burden to show: 1) that the government ultimately could not prevail under any circumstances; and 2) that equity jurisdiction otherwise exists. Enochs v. Williams Packing Co., 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962). In applying the above standard to this case, the district court held that the appellants failed to sustain their burden of proof. In addition, the court found that the appellants suffered no irreparable harm because an adequate remedy existed at law; under section 6103 of the Code, the appellants can recover monetary damages if they prove that the IRS violated the statutory rules preventing disclosure of tax return information.
 
 
 6
 The district court then turned to the question of declaratory relief and held that, because the federal tax exception to the Declaratory Judgment Act is at least as broad as the collection of taxes provision of the Anti-Injunction Act, declaratory relief also was barred.
 
 
 7
 In a later judgment, dated August 15, 1986, the court granted the government's motion for summary judgment on all counts of the complaint, including those seeking damages.[1] In addressing the merits in an accompanying order, the district judge reviewed the language of section 6103(n)[2] of the Code and concluded that the disclosure of the appellants' tax return information to the Bank was not in violation of the Code. In addition, the court noted that section 6302(c)[3] of the Code permits the Secretary of the Treasury (the Secretary) to authorize banks to collect any tax promulgated under the internal revenue laws. Reading both sections together, the district court concluded that the actions of the IRS did not violate any antidisclosure provision under the Code.
 
 II
 Discussion
 A.
 
 8
 The district court decided that the Anti-Injunction Act and the federal tax exception to the Declaratory Judgment Act preclude injunctive and declaratory relief in this case. Nevertheless, because the appellants also sought damages, the district court was required to address the substantive issue raised by the appellants. The presence of the damage claim also requires that, on appeal, we reach the merits. Because our disposition precludes the possibility of any relief for the appellants, we shall not unnecessarily lengthen this opinion by addressing whether the Anti-Injunction Act and the federal tax exception to the Declaratory Judgment Act preclude injunctive and declaratory relief.[4]
 
 B.
 
 9
 The appellants submit that the district court improperly interpreted sections 6103(n) and 6302(c) of the Code. With respect to section 6103(n), the appellants argue that the district court failed to interpret this exception in light of the strong general policy in favor of confidentiality contained in section 6103(a) that "[r]eturns and return information shall be confidential...." 26 U.S.C. Sec. 6103(a). In their view, the language of subsection (n), that authorizes disclosure when "necessary in connection with the processing, storage, transmission, and reproduction of such [tax] returns and return information," 26 U.S.C. Sec. 6103(n), carves out a very narrow nondisclosure exception. The appellants urge us to read the phrase "necessary in connection with" as permitting only "limited disclosures incident to the IRS ' [own] processing of returns." Appellants' Br. at 22 (emphasis in original). Therefore, they contend, subsection (n) only permits disclosures to contractors providing services related to the mechanical processing of tax returns; it does not permit the contracting out of the entire processing of tax returns as permitted by the district court.
 
 
 10
 Turning to section 6302, the appellants submit that this section does not establish any exception to the general rule against disclosure. In their view, the clear objective of section 6302(c) is the "expeditious transfer of withheld tax funds into the federal treasury." Id. at 28. The appellants contend that banks authorized to receive taxes under this provision merely are middlemen transferring money from taxpayers to the IRS. By contrast, they contend, the Illinois lockbox program implemented by the IRS permits banks to process tax returns and disclose return information. As a result, the appellants contend that there is no basis for the district court's decision permitting disclosure of the appellants' return information under section 6302 of the Code.
 
 
 11
 On the other hand, the government argues that both sections 6103(n) and 6302(c) of the Code authorize the disclosure of tax return information to employees of the Bank. Citing the statutory language of section 6103(n), the government argues that disclosure was proper here because it was "necessary" to carry out federal tax administration under the Illinois lockbox program. In contrast to the appellants, the United States asserts that the word "necessary" as applied in the statute, refers only to disclosure of return information and not to the farming out or other procedures used to process taxes. According to the government, therefore, the district court validly applied the section 6103(n) exception to the general rule against disclosure.
 
 C.
 
 12
 Turning to our own analysis, we initially note that "a motion for summary judgment should be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Illinois v. Bowen, 808 F.2d 571, 573-74 (7th Cir.1986); see Fed.R.Civ.P. 56(c). Here, there is no dispute as to material facts. We are presented with a question of law.
 
 
 13
 The appellants are correct in their assertion, and we do not understand the government to disagree, that Congress, in enacting the Tax Reform Act of 1976, intended section 6103 to be a general prohibition against the disclosure of tax return information unless expressly authorized by an exception. See 26 U.S.C. Sec. 6103. See generally Church of Scientology of California v. IRS, --- U.S. ----, 108 S.Ct. 271, 98 L.Ed.2d 228 (1987). The appellants also are correct, and again the government does not disagree, that the documentation used in the lockbox plan at issue here does come within the definition of "return information" as that term is defined in section 6103(b)(2). See generally id.; King v. IRS, 688 F.2d 488 (7th Cir.1982).
 
 
 14
 The general requirement of confidentiality applicable to such information is, however, subject to several exceptions, including the one at issue here. Subsection (n) of section 6103 of Title 26 of the United States Code provides in relevant part:
 
 
 15
 Pursuant to regulations prescribed by the Secretary, returns and return information may be disclosed to any person ... to the extent necessary in connection with the processing, storage, transmission, and reproduction of such returns and return information, and the programming, maintenance, repair, testing, and procurement of equipment, for purposes of tax administration.
 
 
 16
 Id. (emphasis supplied). In our view, the plain language of this exception supports the view of the government. We do not believe that the language can be fairly read to forbid the sort of "contracting out" of the processing function as took place here. The statute quite plainly permits the disclosure of return information to those persons--whomever they may be--who are processing the return information. That disclosure is permitted to the extent necessary to complete the assigned task.
 
 
 17
 Our reading of subsection (n) is supported by a reading of the entire text of section 6103. First of all, in subsection (a), which sets forth the general rule of confidentiality upon which the appellants rely, Congress specifically contemplated the possibility that nongovernment employees might have access to return information and imposed on such nongovernmental personnel the obligation of confidentiality. See 26 U.S.C. Sec. 6103(a)(3). Then, in the following subsections, with exacting care, Congress detailed who would have access to this material and the purposes for which they could have access. If Congress had intended to preclude access by non-IRS employees who work for a private concern under contract to the IRS, it could have indicated that intent quite easily. Indeed, given the precision with which the entire section is drafted, we hardly can conclude that, when it came to this one exception, Congress deviated from the pattern it otherwise had followed.[5]
 
 
 18
 While the legislative history is somewhat sparse, it also supports our reading of the exception. The Senate Report commentary on the subsection (n) exception noted that:
 
 
 19
 The IRS would be authorized to disclose, to the extent necessary for purposes of tax administration, returns and return information to any person with respect to his performance of services in connection with the processing, storage, transmission, or reproduction of returns and return information....
 
 
 20
 S.Rep. No. 938, 94th Cong., 2d. Sess. 341, reprinted in 1976 U.S.Code Cong. & Admin.News 2897, 3439, 3771.
 
 
 21
 We are disinclined to attribute any other intention to Congress for yet another reason. In enacting section 6103, Congress left intact section 6302(c) which empowered the Secretary to authorize certain financial institutions to receive tax payments on behalf of the United States. While the function of the private institution under section 6302(c) may be somewhat different from the one in the case before us, it appears that employees of such an institution may well have access to information protected by section 6103. See 31 C.F.R. Secs. 214.6, 214.7 (1986). Yet, Congress did not forbid access to such information by non-IRS employees.[6]
 
 
 22
 It is impossible to read section 6103 and to examine the continuing congressional scrutiny to which it has been subjected in succeeding sessions without concluding that privacy of tax returns is a matter that has received the careful and continuing attention of Congress. The section has been subjected to many amendments and the Secretary is obliged to furnish the committees of Congress with an annual report concerning the procedures and safeguards utilized to ensure the confidentiality of return information. See 26 U.S.C. Sec. 6103(p)(5). Many of these amendments were enacted after the Secretary had promulgated regulations interpreting the subsection (n) exception. We must, therefore, assume that Congress has been quite aware that the Secretary, in his regulations, has taken the position that the IRS takes in this case. For instance, Treasury Regulation Sec. 301.6103(n)-1 reads in part:
 
 
 23
 (b) Limitations. For purposes of paragraph (a) of this section [creating an exception to the general rule against disclosure], disclosure of returns or return information in connection with contractual procurement of property or services described in such paragraph will be treated as necessary only if such procurement or the performance of such services cannot otherwise be reasonably, properly, or economically carried out or performed without such disclosure.... Thus, for example, if an activity described in paragraph (a) can be reasonably, properly, and economically conducted by disclosure of only parts or portions of a return or if deletion of taxpayer identity information (as defined in section 6103(b)(6) of the Code) reflected on a return would not seriously impair the ability of the contractor or his officers or employees to conduct the activity, then only such parts or portions of the return, or only the return with taxpayer identity information deleted, should be disclosed.
 
 
 24
 26 C.F.R. Sec. 6103(n)-1 (1987) (emphasis supplied).
 
 
 25
 It is clear from the language of the regulation that disclosure of tax return information is authorized when it is a necessary step in the processing of tax returns. The example in the regulation further illuminates this point. Essentially, it demonstrates that, when the IRS contracts out an IRS-type service, the extent of the tax return disclosure must be only as broad as necessary to carry out the service.[7]
 
 
 26
 The appellants' disagreement with the balance that Congress has struck between the need for individual financial privacy and the fair and expeditious collection of revenues is a matter that ought to be addressed to their elected representatives. If Congress deems it appropriate to place more stringent restrictions on the use of non-IRS personnel in the processing of returns, we can expect that it will do so. However, that decision is for the Congress, not this court.
 
 
 27
 Accordingly, the judgment of the district court is affirmed.
 
 
 28
 AFFIRMED.
 
 
 
 [1]
 The court denied the appellants' cross-motion for summary judgment
 
 
 [2]
 26 U.S.C. Sec. 6103(n) states as follows:
 Pursuant to regulations prescribed by the Secretary, returns and return information may be disclosed to any person, including any person described in section 7513(a), to the extent necessary in connection with the processing, storage, transmission, and reproduction of such returns and return information, and the programming, maintenance, repair, testing, and procurement of equipment, for purposes of tax administration.
 
 
 [3]
 26 U.S.C. Sec. 6302(c) states as follows:
 The Secretary may authorize Federal Reserve banks, and incorporated banks, trust companies, domestic building and loan associations, or credit unions which are depositaries or financial agents of the United States, to receive any tax imposed under the internal revenue laws, in such manner, at such times, and under such conditions as he may prescribe; and he shall prescribe the manner, times, and conditions under which the receipt of such tax by such banks, trust companies, domestic building and loan associations, and credit unions is to be treated as payment of such tax to the Secretary.
 
 
 [4]
 If applicable, the Anti-Injunction Act would preclude the district court from adjudicating claims for injunctive and declaratory relief. LaSalle Rolling Mills, Inc. v. United States, 832 F.2d 390, 392 (7th Cir.1987); Farnum v. United States, 813 F.2d 114, 116 (7th Cir.1987); Laino v. United States, 633 F.2d 626, 629 (2d Cir.1980). Similarly, the federal tax exception to the Declaratory Judgment Act, if applicable, presents a jurisdictional bar to declaratory relief "with respect to Federal taxes." See Nelson v. Regan, 731 F.2d 105, 109 (2d Cir.), cert. denied, 469 U.S. 853, 105 S.Ct. 175, 83 L.Ed.2d 110 (1984). Furthermore, when a court finds that it lacks jurisdiction under one of the Acts, it need not address the other. See Laino, 633 F.2d at 629 n. 2 (refusing to address Declaratory Judgment Act because the court had no jurisdiction under Anti-Injunction Act)
 
 
 [5]
 For instance, in subsection (h) of Sec. 6103, Congress specified: "Returns and return information shall, without written request, be open to inspection by or disclosure to officers and employees of the Department of the Treasury whose official duties require such inspection or disclosure for tax administration purposes." 26 U.S.C. Sec. 6103(h)(1) (emphasis supplied)
 
 
 [6]
 We find it unnecessary to reach the government's argument that Sec. 6302(c) specifically authorizes the program at issue here
 
 
 [7]
 Subsections (c) and (d) of Treasury Regulation Sec. 301.6103(n)-1, 26 C.F.R. Sec. 301.6103(n)-1(c), (d) (1987), provide procedural safeguards and notification requirements for information disclosed under regulation 301.6103(n)-1. Pursuant to these requirements, the contract between the IRS and the Bank sets forth numerous provisions for the protection of further disclosure of tax return information unnecessary for processing. See R.43 (memorandum of understanding for the establishment and operation of a lockbox depository arrangement) at 2-3. These safeguards include inter alia: that the supervision and processing work is to be completed only by Bank employees, that the Bank is not to disclose any return information to any state or federal agencies, that the Bank notify all Bank employees of the applicable civil and criminal penalties for unauthorized disclosure of return information, that the Bank provide adequate security of the returns, and that the IRS reserves the right to inspect the premises of the Bank. Furthermore, the appellants do not raise as an issue that any of the employees of the Bank have improperly disclosed such return information. Accordingly, it appears that the appellants have little cause for apprehension that their return information will be disclosed to third parties