**Ralph H. CURRIE, Jr., and Carpets by Ralph Currie, Inc., Plaintiffs-Appellants,**

v.

**INTERNAL REVENUE SERVICE, Defendant-Appellee.**

No. 81–7984.

United States Court of Appeals, Eleventh Circuit.

May 2, 1983.

**524**

Arnall, Golden & Gregory, S. Jarvin Levison, Donald I. Hackney, Jr., Atlanta, Ga., for plaintiffs-appellants.

Myles E. Eastwood, Asst. U.S. Atty., Atlanta, Ga., Michael L. Paup, Chief Appellate Section, Glenn L. Archer, Asst. Atty. Gen., Richard W. Perkins, Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before GODBOLD and KRAVITCH, Circuit Judges, and MORGAN, Senior Circuit Judge.

LEWIS R. MORGAN, Senior Circuit Judge:

Ralph H. Currie and Carpets by Ralph H. Currie, Inc., (Appellants) appeal from an order of the United States District Court for the Northern District of Georgia denying the release of Internal Revenue Service documents pursuant to the Freedom of Information Act, 5 U.S.C. § 552 (1978). The Internal Revenue Service contends the documents are exempt from disclosure under the Freedom of Information Act, 5 U.S.C. §§ 552b(3), and (b)(7)(A) (1978), and the Internal Revenue Code, 26 U.S.C. § 6103(e)(7). The appellants contend the Internal Revenue Service did not provide a sufficient factual basis and justification for their claimed exemptions from disclosure. We conclude the Internal Revenue Service

has sufficiently demonstrated the withheld documents are exempt from disclosure under the Freedom of Information Act and therefore affirm the court below.

## I. BACKGROUND

The Internal Revenue Service is conducting a civil and criminal investigation into the tax liabilities of Ralph H. Currie for the tax years 1975 through 1978 and a civil investigation into the tax liabilities of Carpets by Ralph Currie, Inc., for the tax years 1976 through 1978. The appellants filed a Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1978), request with the Internal Revenue Service (IRS) seeking the release of certain documents [1] within the control of the IRS relating to the IRS's investigation of their tax liabilities. The IRS released part of the documents covered by the FOIA request but refused to disclose the remainder of the documents,[2] contending the undisclosed documents were exempt from disclosure pursuant to Exemption 3, 5 U.S.C. § 552(b)(3), and Exemption 7(A), 5 U.S.C. § 552(b)(7)(A),[3] of the FOIA and

1. The requested information included the working papers of IRS personnel relating to the appellants' tax liabilities, correspondence by the IRS with third parties, internal agency memoranda, fraud referrals, informant's claim for reward, memoranda of interviews with third parties, documents furnished by third parties, case summary prepared by the IRS, and lists of documents and records of the appellants examined or copied by the IRS.

2. The district court's order of October 5, 1981, recited that 34 documents were tendered *in camera* by the IRS for a determination of the appropriateness of exemption from disclosure under the Freedom of Information Act. Record at 319. After these documents were transmitted to this court it was discovered only 29 documents were included. In an attempt to determine whether or not the "missing" documents were properly part of the record on appeal, the clerk of court, as directed by this court, communicated with counsel for the parties and asked them to inform the court whether or not these 5 documents were released to the appellants. Counsel for the parties have informed the court that the 5 documents were released. These communications are made part of the record on appeal. Fed.R.App.P. 10(e). *See Carroll v. Frontera Compania Naviera*, 390 F.2d 311 (3rd Cir.1968). *See also* 9 Moore's Federal Practice § 210.08[2] (2d ed.

1982). Accordingly, only the 29 documents submitted to this court are under review.

3. 5 U.S.C. § 552(b) (1978) provides:

(b) This section does not apply to matters that are:

(3) specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel.

pursuant to Sections 6103(c) and (e)(6)[4] of the Internal Revenue Code of 1954, 26 U.S.C. §§ 6103(c) and (e)(6). After the IRS failed to timely process and respond to an administrative appeal, the appellants filed this action in the district court seeking production of the withheld documents.[5]

■ The district court found the withheld material was not subject to disclosure pursuant to 26 U.S.C. § 6103 and alternatively, that the withheld material was exempt from disclosure under the Freedom of Information Act's Exemption 3, 5 U.S.C. § 552(b)(3), and Exemption 7(A), 5 U.S.C. § 552(b)(7)(A).[6] The district court also denied the appellants' request for an order requiring the IRS to submit an index detail-

ing each withheld document and justifying the exemption from disclosure pertaining to each document. From the grant of summary judgment in favor of the IRS, the appellants bring this appeal pursuant to 28 U.S.C. § 1291 (1978).

## II. DISCUSSION

The IRS contends that I.R.C. § 6103, 26 U.S.C. § 6103, is a self-contained statutory scheme regulating the disclosure of tax return information and therefore the disclosure or nondisclosure of such information is not subject to the FOIA and its concomitant procedural requirements and policy objectives. Judicial review of the agency's

---

**4.** 26 U.S.C. § 6103(e)(6) (now codified as 26 U.S.C. § 6103(e)(7) and hereinafter referred to as § 6103(e)(7)) provides:

(e) Disclosure to Persons Having Material Interest.—

(7) Return Information.—Return information with respect to any taxpayer may be open to inspection by or disclosed to any person authorized by this subsection to inspect any return of such taxpayer if the Secretary determines that such disclosure would not seriously impair Federal tax administration.

Section 6103(c) states:

(c) Disclosure of Returns and Return Information to Designee of Taxpayer.—

The Secretary may, subject to such requirements and conditions as he may prescribe by regulations, disclose the return of any taxpayer, or return information with respect to such taxpayer, to such person or persons as the taxpayer may designate in a written request for or consent to such disclosure, or to any other person at the taxpayer's request to the extent necessary to comply with a request for information or assistance made by the taxpayer to such other person. However, return information shall not be disclosed to such person or person if the Secretary determines that such disclosure would seriously impair federal tax administration.

Return information is defined by Section 6103(b)(2) as:

(2) Return information.—The term "return information" means—

(A) a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secre-

tary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense, and

(B) any part of any written determination or any background file document relating to such written determination (as such terms are defined in section 6110(b) which is not open to public inspection under section 6110, but such term does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer.

**5.** 5 U.S.C. § 552(a)(4)(B) (1978) provides:

On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records, or any part thereof, shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action.

**6.** The district court determined that the disputed documents are not subject to disclosure pursuant to 26 U.S.C. § 6103 and 5 U.S.C. §§ 552(b)(3), and (7)(A). Because of our conclusion that the documents are exempt from disclosure pursuant to 5 U.S.C. § 552(b)(3), the district court's reliance on 26 U.S.C. § 6103 is harmless error. *Collins v. Seaboard Coastline Railroad Co.*, 681 F.2d 1333 (11th Cir.1982).

decision to withhold these documents, they argue, is limited to a determination of whether the decision was arbitrary or an abuse of discretion. We disagree.

Exemption 3 of the FOIA, 5 U.S.C. § 552(b)(3), provides that the FOIA's disclosure requirements do not apply to matters specifically exempted from disclosure by another statute, provided the statute meets particular criteria.[7] In *Chamberlain v. Kurtz*, 589 F.2d 827 (5th Cir.1979), *cert. denied* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1980), this court's predecessor[8] determined that 26 U.S.C. § 6103 satisfied the criteria of Exemption 3 after extensively analyzing the language of Section 6103 and the legislative history of Exemption 3 and Section 6103. Accordingly, the court held that tax return information, as defined in 26 U.S.C. § 6103(b)(2),[9] is not subject to disclosure pursuant to 26 U.S.C. § 6103(e)(6) (now codified as 26 U.S.C. § 6103(e)(7),[10] where the IRS can demonstrate the release of the information would seriously impair federal tax administration. *Id.* at 838–40. Importantly, the court viewed the nondisclosure of the requested information as an exemption from the normal policy of full disclosure under the FOIA.

The IRS's contention that Section 6103 is a self-contained scheme governing disclosure derives from a line of cases having their genesis in *Zale Corporation v. IRS*, 481 F.Supp. 486 (D.D.C.1979). Judge Gesell, in a well-reasoned opinion, determined that Section 6103 is the sole standard governing the release of tax return information. *Id.* at 490. Therefore the court limited judicial review of the IRS's determination on disclosure not to the FOIA required *de novo*

review, but rather to a determination consistent with the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*, of whether the decision was rational and supported by the record. *Id.* at 490.[11] Any other construction, it was concluded, would render Section 6103 a "legislative futility." Judge Gesell reasoned:

> [T]he structure of section 6103 is replete with elaborate detail identifying the discrete groups to whom disclosure of certain specified types of information is permissible. In this respect it differs markedly from the structure of FOIA, which calls for the release of information to the public at large with no showing of need required. Despite ample indication in the legislative history that Congress was aware of FOIA while it labored over the tax reform legislation, there is no evidence of an intention to allow that Act to negate, supersede, or otherwise frustrate the clear purpose and structure of § 6103. For a court to decide that the generalized strictures of FOIA take precedence over this subsequently enacted, particularized disclosure scheme would in effect render the tax reform provision an exercise in legislative futility. Absent an indication that Congress so intended, this Court will not imply such a prospective pre-emption by FOIA.

481 F.Supp. at 489 (footnotes omitted).

The IRS nonetheless argues *Zale* and *Chamberlain* can be reconciled because *Chamberlain* never addressed the question of whether Section 6103 is the sole standard governing disclosure of tax return information.[12] Accordingly, they argue we are free to follow *Zale* and declare Section 6103 is

---

7. See note 3 supra.

8. The Eleventh Circuit, in the en banc decision of *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981), adopted as precedent the decisions of the Former Fifth Circuit decided prior to October 1, 1981.

9. See note 4 supra.

10. Id.

11. Judge Gesell also recognized that Section 6103 qualified as an Exemption 3 statute. *Zale*

*Corporation v. IRS*, 481 F.Supp. at 490 n. 13. See also *King v. IRS*, 688 F.2d 488 (7th Cir. 1982), *Anheuser-Busch v. IRS*, 493 F.Supp. 549 (D.D.C.1980). *Zale*, however, appears to be the majority rule. See *King*, 688 F.2d at 495.

12. Judge Gesell initiated this reasoning which was not raised by either party in *Zale Corporation*. *Zale Corporation*, 481 F.Supp. at 487. The decision in *Chamberlain v. Kurtz* predated the decision in *Zale Corporation*.

both an Exemption 3 statute and a self-contained disclosure statute. We decline to do so. For the court to follow *Zale* would be an exercise in judicial futility. District courts would be compelled to engage in both FOIA and *Zale* analyses when confronted with cases such as this. *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir. 1981). (Prior decisions of the Eleventh Circuit, including decisions of the Former Fifth Circuit adopted as precedent by the Eleventh Circuit, may be overruled only by the Eleventh Circuit sitting *en banc*). *See also, United States v. McIver,* 688 F.2d 726 (11th Cir.1982). Indeed, such a procedure was employed in this case. Once a district court has analyzed a case under the strictures of FOIA it is unnecessary for it to engage in the *Zale* analysis; a nondisclosure decision that passes muster under the "tougher" FOIA requirements will have a rational basis. Such needless use of scarce judicial resources is not to be encouraged.

 The appellants contend that the district court erred in finding all of the documents are exempt from disclosure under the FOIA. In reviewing determinations under the FOIA, we must determine (1) whether

the district court had an adequate factual basis for its determination and (2) assuming an adequate factual basis, whether the court's determination was clearly erroneous. *Chilivis v. Securities and Exchange Commission,* 673 F.2d 1205, 1210 (11th Cir.1982); *Stephenson v. IRS,* 629 F.2d 1140, 1144 (5th Cir.1980). We hold that the court below did have a sufficient factual basis for its determination and that its determination was not clearly erroneous.

The appellants argue the IRS has failed to support adequately its claim for exemption from disclosure under the FOIA. At the outset of these proceedings the appellants filed a motion requesting that the district court order the IRS to submit to them a *Vaughn v. Rosen* [13] index setting forth an index of the documents, the exemptions from disclosure claimed for each document, and the factual basis for the claimed exemption. *See Stephenson v. IRS,* 629 F.2d at 1144. The district court deferred ruling on the motion until it had considered the IRS's motion for summary judgment. The IRS supported its motion for summary judgment with affidavits of IRS personnel [14] which briefly outlined the

---

**13.** 484 F.2d 820 (D.C.Cir.1973), *cert. denied* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974) on appeal from remand, 523 F.2d 1136 (D.C. Cir.1975). The court in *Vaughn* was faced with evaluating a claim of exemption from the FOIA solely on a conclusory affidavit. The court disapproved of resolving factual disputes in FOIA cases based upon affidavits and therefore required the withholding government agencies to support their claim by filing an index of the documents detailing their justification for the claimed exemption. *Vaughn v. Rosen,* 484 F.2d at 826–28.

**14.** The affidavit of Alan Freeland, Chief, Criminal Investigation Division, Atlanta District, Internal Revenue Service, provides in part:

3. I am familiar with the FOIA request submitted on behalf of plaintiffs for records generated in the course of the Service's investigation of plaintiffs' tax affairs and with this FOIA lawsuit.

4. Included among the materials in issue in this lawsuit are federal income tax returns of taxpayers other than plaintiffs. These returns are being withheld pursuant to 26 U.S.C. § 6103(a), which prohibits the Service from disclosing returns unless authorized by Title 26. Plaintiffs are not authorized access to these returns under any provision of Title 26.

5. The remaining documents at issue in this lawsuit were received by, prepared by, furnished to or collected by the Internal Revenue Service in the course of the investigation involving plaintiffs' federal income tax liabilities. Therefore, these documents constitute "return information" as that term is defined by 26 U.S.C. § 6103(b).

6. Based on my discussions with Special Agent T. Wayne Marshall, the special agent in charge of the joint civil and criminal investigation, I have determined that production of the materials at issue in this FOIA lawsuit described in paragraph 5 could seriously impair the joint civil and criminal investigation of plaintiffs' federal income tax liabilities by prematurely revealing the substance of the investigation to the subjects of the investigation. Disclosure of the information withheld could aid plaintiffs in constructing defenses, tampering with potential evidence or otherwise frustrating the enforcement proceedings. This in turn could impair the Government's ability to present its best case in court should civil or criminal judicial proceedings be instituted against plaintiffs. More specifically, production of the materials would reveal: potential evidence, the reliance being placed by the Service upon the evidence; prospective testimony;

exemptions claimed and the harm that would flow from disclosure. However, after the decision in *Stephenson v. IRS, supra,* which held similar affidavits [15] were insuffi-

witnesses (including a confidential source or confidential sources); prospective witnesses; investigative leads; specific transactions being investigated; defenses that might be raised and the validity of those defenses; investigators' theories and thought processes.

7. Based upon the above, I have made the determination under 26 U.S.C. § 6103(e)(6) that disclosure of the return information at issue in this lawsuit would seriously impair federal tax administration.

8. Also included among the materials in issue are documents revealing the identity of an individual or individuals I consider to be a confidential source or sources of information used in the course of the joint civil and criminal tax investigation. The individual(s) was/were given assurances that both the fact of the Service's contact with the individual(s) and the information the individual(s) furnished would be maintained in confidence by the Service or the information was furnished in circumstances from which the individual(s) could infer an assurance that both the information the individual(s) furnished and the fact of the Service's contact with the individual(s) would be maintained in confidence. I am of the view that release of such information would have a chilling effect on the cooperation of confidential sources and as a consequence would threaten a source of information valuable to the Service in its administration of the federal internal revenue laws.

Record at 174–176.

The affidavit of T. Wayne Marshall, special agent assigned to the case, provides in part:

3. I am familiar with the Freedom of Information Act (FOIA) request made on behalf of plaintiffs and the documents which were requested. Included among the materials in issue are federal income tax returns of taxpayers other than plaintiffs. Disclosure of these returns is prohibited by 26 U.S.C. § 6103(a). The remaining documents at issue in this lawsuit were received by, prepared by, furnished to, or collected by the Internal Revenue Service in the course of the investigation of plaintiffs' possible violations of the Federal income tax laws.

4. The materials which are presently at issue in this lawsuit consist of: (1) memoranda of contacts with third parties, including a confidential source or confidential sources; (2) information received from third parties relative to financial transactions involving Currie; (3) records and information received from a state law enforcement agency; (4) special agent's workpapers consisting of among other things notes and other documents analyzing evidence and information developed and received during the investigation; (5) correspondence from third parties (including correspondence from a state law enforcement agency); and (6) internal memoranda which reflect the scope and direction of the Government's case, such as memoranda to the file; (7) federal income tax returns of taxpayers other than plaintiffs.

5. I personally reviewed the materials referred to in Paragraph 4 above with Willard Foran of the Atlanta District Disclosure Office and by telephone reviewed the materials with James Gray of the Disclosure Litigation Division, Office of Chief Counsel. Based on this review it was determined that 66 pages and a portion of an additional page could be released without interfering with the joint civil and criminal investigation.

6. I determined that release of the documents referred to in Paragraph 4 above would interfere with the investigation of plaintiffs and with any potential criminal prosecution by revealing the potential evidence against plaintiffs, the analysis of and the reliance placed on the evidence by the Service, the transactions being investigated, the direction of the investigation, and the scope and limits of the Government's investigation. To reveal the identities of third parties and potential witnesses (including a confidential source or confidential sources) contacted during the investigation could subject these third parties and potential witnesses to harassment. Access to potential evidence could allow plaintiffs to construct defenses and tamper with the evidence. In my view, disclosure of the materials at issue in this FOIA litigation would provide plaintiffs with premature access to the Service's investigatory materials and thus preclude the Government from presenting its best case in court should civil or criminal judicial proceedings be instituted against plaintiffs.

7. Certain of the materials in issue referred to in Paragraph 4 above set forth the identities of or information which might reveal the identities of an individual confidential source or sources, potential witnesses and other third parties. Accordingly, this information should, in my view, be withheld from disclosure to protect these persons' privacy, to minimize their public exposure or possible harassment and also to insure that the individual confidential source or sources and other complaining parties remain willing to provide information to the Service in the future.

8. As indicated in Paragraph 7, some of the materials in issue reveal the identity of an individual or individuals I consider to be a confidential source or sources of information used in the course of the joint civil and criminal tax investigation. The individual(s) was/were given assurances that both the fact of the Service's contact with the individual(s) and the information the individual(s) furnished would be maintained in confidence by the Service or the information was furnished in circumstances from which the individual(s) could infer an assurance that both the information the individual(s) furnished and the fact of the Service's

cient to satisfy the government's burden of proof in FOIA cases, *Id.* at 1145, the IRS tendered all of the disputed documents to the court for an *in camera* inspection together with individual cover sheets for each document. The cover sheets set forth the claimed exemptions applicable to that document, the extent to which the document was withheld, an explanation relative to the claimed exemption, and the harm flowing from disclosure of that document. After consideration of the documents and the cover sheets, the district court denied the motion for a *Vaughn v. Rosen* index and granted summary judgment in favor of the IRS.

■ The appellants contend the conclusory affidavits submitted by the IRS to support the claimed exemption, together with the lack of a *Vaughn v. Rosen* index, did not provide the district court with a sufficient factual basis for the determination of the correctness of the IRS's claim for exemption from disclosure. The appellants misconstrue the import of *Stephenson.* In *Stephenson* it was held that in an FOIA case it is insufficient for the district court to rely entirely on affidavits similar to those in the present case where the disputed documents do exist. *Id.* The *Stephenson* court required more of the district court to assure itself of the "factual basis and bona fides of the agency's claims of Exemption." *Id.* Alternative procedures were recommended including sanitized indexing, oral testimony, and random sampling of the documents *in camera. Id.* However, these procedures are substitutes to a complete *in camera* inspection of all the documents. *Id.* at 1144. The district court's review of the claim for exemption was adequate; it reviewed the documents in their entirety aided by the cover sheets prepared by the IRS. Resort to an *in camera* inspection is discretionary with the court, 5 U.S.C.

§ 552(a)(4)(B), and the court's management of the case will not be disturbed absent an abuse of discretion. *Chamberlain v. Kurtz,* 589 F.2d at 835. We find no abuse of discretion in this case.

■ The FOIA was designed to encourage open disclosure of public information. *Baldrige v. Sharpio,* 455 U.S. 345, 102 S.Ct. 1103, 71 L.Ed.2d 199 (1982). To achieve this end, documents held by government agencies are presumed subject to disclosure unless, after a *de novo* review of the government's determination not to disclose, the agency has carried the burden of proving the withheld materials are within one of the exemptions of the FOIA. 5 U.S.C. § 552(a)(4)(B); *Chilivis v. Securities and Exchange Commission,* 673 F.2d at 1210–11; *McCorstin v. U.S. Department of Labor,* 630 F.2d 242 (5th Cir.1980). To facilitate this review the courts often rely upon indices such as a *Vaughn v. Rosen* index in evaluating the claims of exemption as they apply to the withheld documents. Although lack of access to such indices by the party seeking disclosure "undercuts the traditional adversarial theory of judicial dispute resolution," *Mead Data Central, Inc. v. U.S. Department of the Air Force,* 566 F.2d 242, 250 (D.C.Cir.1977); *Vaughn v. Rosen,* 484 F.2d at 824, the role of the courts in a suit under the FOIA in effectively determining the propriety of a government agency's decision to withhold material is not completely frustrated by an *in camera* inspection of the disputed documents with accompanying cover sheets such as employed in this case. Thorough *in camera* inspection of the withheld documents where the information is extensive and the claimed exemptions are many, however, is not the preferred method of determining the appropriateness of the government agency's characterization of the withheld information. Testing the ac-

---

contact with the individual(s) would be maintained in confidence. I am of the view that release of such information would have a chilling effect on the cooperation of confidential sources and as a consequence would threaten a source of information valuable to the Service in

its administration of the Federal internal revenue laws.
Record at 177–180.

**15.** The affidavits are set out in *Stephenson v. IRS,* 629 F.2d at 1142–43 n. 5.

curacy of the agency's characterization where the documents run into the hundreds and thousands of pages is too burdensome a task to be placed upon trial judges without the aid of a focused inquiry brought about by the adversarial process. At the appellate level the burden of reviewing the trial court's determination "without the controverting illumination that would ordinarily accompany a request to review a lower court's determination," *Vaughn v. Rosen,* 484 F.2d at 825, is overwhelming without the commitment of enormous judicial resources. Because of self-evident necessity, the appellants in this case were unable to fully develop their presentation which makes our task that much more difficult. Also, the district court's opinion is stated in conclusory terms which further compounds our burden of inquiring into the appropriateness of the district court's determination. The procedure employed in this case, therefore, is to be utilized in only the rare case such as this where the disputed documents are relatively brief, few in number, and where there are few claimed exemptions.

■ Having decided the district court had an adequate factual basis for its determination of the propriety of the nondisclosure of the documents at issue, we must ascertain whether the district court's determination was clearly erroneous. To qualify for exemption under 5 U.S.C. § 552(b)(3) pursuant to 26 U.S.C. § 6103(e)(7), the IRS must demonstrate that two criteria have been met:[16] (1) the documents must constitute "return information" as defined by 26 U.S.C. § 6103(b)(2),[17] and (2) disclosure of which would seriously impair federal tax administration. The district court concluded the IRS had established that the documents met both criteria. Because we conclude that this determination was not clearly erroneous, we affirm the court below.

Appellants argue that not all of the withheld material is return information. In conjunction with this argument, they contend that even if all of the material is properly characterized as return information the IRS is under an obligation to delete identifying material and disclose the remainder to the requesting party. These contentions are without merit. The documents at issue consist of internal agency memoranda reflecting the direction and scope of the investigation of the appellants' tax liability, memoranda of interviews with witnesses and confidential informants, draft affidavits of confidential informants, correspondence with a state law enforcement agency and other third parties, information received from third parties relating to financial transactions with the appellants, federal tax returns of third parties, and IRS personnels' notes and work papers concerning the scope and direction of the investigation. Clearly the withheld materials constitute "data received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return" because they were compiled pursuant to an investigation into the potential liability for deficiencies or penalties by the appellants. *See Chamberlain v. Kurtz, supra* at 840–41.

■ The appellants' contention that the import of the last proviso of Section 6103(b)(2) ("but such term does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer"), the so-called Haskell Amendment to the Tax Reform Act of 1976, means that after deletion of "identifying matter" return information is disclosable is equally without merit. The Haskell Amendment, by its own force and effect, does not require the release of return information if exempt material is readily excisable. The amendment was intended to neither enhance nor diminish the access to information under the FOIA. 122 Cong. Rec. S24012 (daily ed. July 27, 1976) (re-

---

**16.** The requesting party must also demonstrate that he is a party authorized by Section 6103 to inspect return information. 26 U.S.C. § 6103(e)(7). The individual taxpayer is such a party. See Note 4 supra.

**17.** See Note 4 supra.

marks of Sen. Haskell).[18] It was intended only to allow release of statistical studies and compilation of data by the IRS to, *inter alia,* committees of Congress. *King v. IRS,* 688 F.2d 488, 492–93 (7th Cir.1982); *Cliff v. IRS,* 496 F.Supp. 568, 573–74 (S.D.N.Y. 1980). *Cf. Long v. IRS,* 596 F.2d 362 (9th Cir.1979), *cert. denied* 446 U.S. 917, 100 S.Ct. 1851, 64 L.Ed.2d 271 (1980). (Taxpayer request for the source material relative to the IRS's Taxpayer Compliance Measurement Program obtainable if there were no significant risk or identifying any particular taxpayer) (Result overruled by Act of August 13, 1982, Pub.L. No. 97–34, Title VII, ¶ 701(a), 95 Stat. 340 (1981). Therefore, we conclude the IRS is under no obligation to delete identifying matter from the documents and that all the withheld material is return information.

An examination of the documents and the cover sheets reveals the harm that would flow from the release of these documents. The release of the documents would hamper the investigation by disclosing the names of confidential informants, the substance of their testimony, the scope, direction, and strength of the investigation, and confidential information about third parties. Such disclosure would reveal the government's case prematurely, could result in witness intimidation, and effectively thwart the IRS's duty to enforce the revenue laws. *Cf. NLRB v. Robbins Tire & Rubber Company,* 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978) (Exemption 7(A) of the FOIA, 5 U.S.C. § 552(b)(7)(A), which provides that disclosure is not required of matters "that are investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would ... interfere with enforcement proceedings," was designed to avoid premature release of investigatory data including witnesses' statements.)

Our decision on the Exemption 3 issue makes it unnecessary for us to consider the propriety of the Exemption 7(A), (C) and (D) claims. Therefore, the judgment of the district court is:

AFFIRMED.

KRAVITCH, Circuit Judge, specially concurring:

I concur in the opinion of the majority, but write separately to emphasize my views with regard to the *Vaughn* index issue. The majority does not require appellee to furnish appellants with a *Vaughn* index for documents it withheld from disclosure. I concur because I agree that nothing in our cases compels providing a *Vaughn* index, or its equivalent, in light of *in camera* inspection of all relevant documents. I think the better policy, however, would be to require an index in all but the "rare" case.

In *Vaughn v. Rosen,* 484 F.2d 820 (D.C. Cir.1973) the court discussed extensively the *in camera* review process of FOIA, noting the benefits of adversarial presentation, and the concomitant disadvantage of a procedure that involves only the withholding agency and the reviewing court:

**18.** Senator Haskell's remarks on the purpose of the amendment provide:

[T]he purpose of this amendment is to insure that statistical studies and other compilations of data now prepared by the Internal Revenue Service and disclosed by it to outside parties will continue to be subject to disclosure to the extent allowed under present law. Thus the Internal Revenue Service can continue to release for research purposes statistical studies and compilations of data, such as the tax model, which do not identify individual taxpayers.

The definition of "return information" was intended to neither enhance nor diminish access now obtainable under the Freedom of Information Act to statistical studies and compilations of data by the Internal Revenue Service. Thus, the addition by the Internal Revenue Service of easily deletable identifying information to the type of statistical study or compilation of data which, under its current practice, has been subject to disclosure, will not prevent disclosure of such study or compilation under the newly amended section 6q03 [6103]. In such an instance, the identifying information would be deleted and disclosure of the statistical study or compilation of data be made.

These remarks constitute the scant legislative history on the purpose of the amendment. *See King v. IRS,* 688 F.2d 488, 492–93; *Cliff v. IRS,* 496 F.Supp. 568, 573 n. 13 (S.D.N.Y.1980).

This lack of knowledge by the party seeking disclosure seriously distorts the traditional adversary nature of our legal system's form of dispute resolution. Ordinarily, the facts relevant to a dispute are more or less equally available to adverse parties. In a case arising under the FOIA this is not true, as we have noted, and hence the typical process of dispute resolution is impossible. In an effort to compensate, the trial court, as the trier of fact, may and often does examine the document *in camera* to determine whether the Government has properly characterized the information as exempt. Such an examination, however, may be very burdensome, *and is necessarily conducted without benefit of criticism and illumination by a party with the actual interest in forcing disclosure.* In theory, it is possible that a trial court could examine a document in sufficient depth to test the accuracy of a government characterization, particularly where the information is not extensive. But where the documents in issue constitute hundreds or even thousands of pages, it is unreasonable to expect a trial judge to do as thorough a job of illumination and characterization as would a party interested in the case.

*Id.* at 824–25 (emphasis supplied).

Even where *in camera* review occurs, I believe it is a rare case indeed that could not benefit significantly from adversarial discussion of the applicability of a given FOIA exemption. Because this case involved very few disputed documents, all reviewed by the district judge, and because our cases previously have not stressed the benefits of this adversarial process, I concur in not requiring an index, or index equivalent, in this "rare" case.