David ELY, Plaintiff-Appellant,

v.

FEDERAL BUREAU OF INVESTIGATION, Defendant-Appellee.

No. 84–3632.

United States Court of Appeals, Eleventh Circuit.

Feb. 10, 1986.

Jane Vehko, Atlanta, Ga., for plaintiff-appellant.

Marc Johnston, Leonard Schaitman, U.S. Dept. of Justice, Civ. Div., Washington, D.C., for defendant-appellee.

Before JOHNSON and ANDERSON, Circuit Judges, and DYER, Senior Circuit Judge.

JOHNSON, Circuit Judge:

We are called upon to consider the scope of disclosure to which a government agency may be subjected when that agency is party to a law suit seeking release of information possibly privileged under the Freedom of Information Act. For the reasons stated herein, we find that an agency must, at a minimum, submit to either of two methods of review by the district court in order to determine if the claim of privilege is properly made. Accordingly, we REVERSE the order of summary judgment below and REMAND this case for trial.

I.

David Ely is incarcerated in a federal prison facility. He filed a request with the Federal Bureau of Investigation ["the FBI" or "the Bureau"], under the Freedom of Information Act ["FOIA"], 5 U.S.C.A. § 552 (1985), for all files and information regarding Raymond J. Barry, who Ely alleged had some connection to the events that led to his imprisonment. Ely intended to use the information in his pending trial. In a letter dated August 24, 1983, the FBI

advised Ely that it would neither confirm nor deny the existence of files on Barry unless Ely filed an affidavit from Barry giving Ely access to this information. The Bureau cited FOIA exemptions under 5 U.S.C.A. §§ 552(b)(3), (6) and (7)(C) as justification.

The appellant filed this action *pro se, in forma pauperis* in the Middle District of Florida seeking declaratory relief. The FBI filed a motion to dismiss; Ely filed a response. The court elected to treat the motion to dismiss as a motion for summary judgment. This conversion was performed consistent with the notice requirements articulated in *Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir.1985) (*per curiam*).

The trial court granted the motion for summary judgment and dismissed the claim with prejudice in an order dated September 4, 1984. The court read FOIA Exemption 3, prohibiting release of matters "specifically exempted from disclosure by statute" as incorporating the provisions of the Privacy Act, 5 U.S.C.A. § 552a (1985), that in turn precluded disclosure of the desired information without Barry's permission. Alternatively, the trial court held that the files were exempt under FOIA Exemptions 6 and 7(C) because they contained personnel and medical information as well as investigatory records. The trial court made this finding despite the fact that the FBI submitted no affidavits or summaries of the information and without conducting an *in camera* inspection. In fact the FBI would neither confirm nor deny for the court the existence of the requested information.

## II.

Ely contends that the trial court lacked an adequate factual basis for its conclusion that the material in question was protected from disclosure under Exemptions 6 and 7(C).[1] We agree.

### A.

■ The FOIA is "primarily an access and disclosure statute." 1984 U.S.Code Cong. & Ad.News at 3789. It provides for wide-ranging citizen access to government documents and presumes them subject to disclosure absent a clear showing to the contrary. *F.B.I. v. Abramson*, 456 U.S. 615, 621, 102 S.Ct. 2054, 2059, 72 L.Ed.2d 376 (1982); *Cochran v. United States*, 770 F.2d 949, 954 (11th Cir.1985). The Act's disclosure provisions are read broadly, its exemptions narrowly. *Department of Air Force v. Rose*, 425 U.S. 352, 366, 96 S.Ct. 1592, 1601–02, 48 L.Ed.2d 11 (1976); *Cochran*, 770 F.2d at 954. The burden is squarely on the government to prove that the information in question is covered by

---

1. The parties briefed an additional question decided below. The FBI and the trial court read FOIA Exemption 3, which states that FOIA does not permit access into matters "specifically exempted from disclosure by statute," as incorporating into FOIA the provisions of the Privacy Act, since that statute specially exempts from disclosure certain files. This is in accord with our holding in *Painter v. FBI*, 615 F.2d 689, 690–91 (5th Cir.1980). The government at oral argument informed us that it no longer advances this argument.

*Painter* has been implicitly overruled by statute, and explicitly rejected in the legislative history. H.R.Rep. No. 726, 98th Cong., 2d Sess. 1, 14, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3741, 3788. Congress passed the CIA Information Act of 1984, Pub.L. No. 98–477, 98 Stat. 2209 (1984), *codified at* 5 U.S.C.A. § 552a (1985), which amended the Privacy Act and clarified the proper reading of the two statutes by decreeing, at section 552a(q), that (1) "[n]o agency shall rely on any exemption contained in section 552 of this title [FOIA] to withhold from an individual any record which is otherwise accessible to such individual under the provisions of this section [Privacy Act]" and (2) "[n]o agency shall rely on any exemption in this section [Privacy Act] to withhold from an individual any record which is otherwise accessible to such individual under the provisions of section 552 of this title [FOIA]." Information obtainable under FOIA but not under the Privacy Act must be released if sought under FOIA. Information available under the Privacy Act but not under FOIA must be disclosed if sought under the former. 1984 U.S.Code Cong. & Ad.News at 3791. This amendment was meant to apply to "all pending and future requests for access...." *Id.* Ely filed his request under the FOIA and under that Act the FBI bears the burden of proving the material requested was privileged. 5 U.S.C.A. § 552(a)(4)(B). Thus, the government's concession of this point was correct, for the trial court's decision on this question was clearly erroneous. *Painter* is no longer viable precedent.

one of the exemptions. *Environmental Protection Agency v. Mink,* 410 U.S. 73, 80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973); *Currie v. Internal Revenue Service,* 704 F.2d 523, 530 (11th Cir.1983).

■ The FOIA creates a series of exemptions for material deemed privileged from disclosure for reasons of public policy or national security. 5 U.S.C.A. § 552(b)(1)–(5), (7)(A)–(B), (7)(D)–(F), (8)–(9). By its clear terms, FOIA places on the courts the obligation to consider and resolve competing claims of privilege and access, relegating the government to the role of furnishing evidence to rebut the presumption of disclosure. "[T]he court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action." 5 U.S.C.A. § 552(a)(4)(B). By so crafting the statute, Congress made clear that the court, not the agency, is to be the ultimate arbiter of privilege. A fair arbitration requires a substantial quantum of information. Thus the court must have access to the possibly privileged documents.

In umpiring this contest, Congress has also directed that we give due deference to the competing *private* value of privacy— that is, the right of the individual citizen to limit access to information about him that the government has gathered. 5 U.S.C.A. § 552(b)(6), (7)(C). While we are to presume disclosure, we must deny access to certain personnel files if disclosure "would constitute a clearly unwarranted invasion of personal privacy," *id.* at (b)(6), and we must prevent disclosure of investigatory records if production would "constitute an

unwarranted invasion of personal privacy." *Id.* at (b)(7)(C). As to both exemptions, we have directed our trial courts to resort to balancing tests as between the personal interest in privacy and the public interest in disclosure. *Cochran,* 770 F.2d at 955 (Exemption 6); *L & C Marine Transport v. United States,* 740 F.2d 919, 922 (11th Cir. 1984) (Exemption 7(C)); *see generally, Rose,* 425 U.S. at 372, 96 S.Ct. at 1604.

In the instant case, the trial court struck this balance at the threshold of summary judgment and found that it tilted in favor of nondisclosure. The trial court reached that determination without reviewing the documents and without knowing if the requested documents even existed. It took the government at its word that disclosure of this information was a violation of the statute's Exemptions 6 and 7(C) [2] because the mere admission that the government even had files on Barry would be an invasion of his right to privacy. It effectively placed on Ely the burden of proving that the documents in question were not privileged.

### B.

The former Fifth Circuit said in *Stephenson v. Internal Revenue Service,* 629 F.2d 1140, 1144 (5th Cir.1980), that the appellate court in cases of this sort has two duties: "(1) We must determine whether the district court had an adequate factual basis for the decision rendered and (2) whether upon this basis the decision reached was clearly erroneous." *Accord, Chilivis v. Securities & Exchange Commission,* 673 F.2d 1205, 1210 (11th Cir.1982). Because the decision below fails under the first prong, it is not necessary to consider the merits of the balance struck, the assignment of burdens of proof, and the determination of privilege as required by prong 2 of *Stephenson.* [3]

---

**2.** Though the trial court relied as well on Exemption 3 in reaching its result, as was noted in footnote 1, Exemption 3 is no longer applicable to this case due to the CIA Information Act. Exemption 6 prohibits disclosure of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy." Exemption 7 precludes disclosure of "investigatory records compiled

for law enforcement purposes, but only to the extent that the production of such records would ... (C) constitute an unwarranted invasion of personal privacy...."

**3.** Considerable words were spent at oral argument on the question of burden of proof and balancing of interests. The government suggested at one point that unless the plaintiff makes

## C.

An "adequate factual basis" is of necessity a somewhat elusive concept, especially in a case such as this, where the trial court made no findings on the record, save to accept the bare assertion of the government that the documents, if they exist at all, are privileged. Our jurisprudence offers the trial court two alternate methods by which to make the adequate factual basis determination: *in camera* review; and the so-called *"Vaughn* Index." Under

some initial showing of public interest in disclosure it would be a "needless formality" to require the government to inform the trial court whether the documents in question exist or to suffer *in camera* review.

This turns our case law on its head. As we noted in *Cochran,* 770 F.2d at 955, the determination that a given FOIA request is to be denied on grounds of privilege requires a two-step inquiry: the court must determine that "(1) the information was [of the sort covered by the relevant exemption]" and *then* undertake "(2) a balancing of individual privacy interests against the public interest in disclosure [that may] reveal[ ] that disclosure of the information constitutes a 'clearly unwarranted invasion of privacy.'" From this we think it clear that the government must first establish to the court's satisfaction that its claim of privilege is *bona fide*—that it properly comes within the ambit of one of the statutory exemptions. Only *after* that showing is made will the court move on to the second step of the *Cochran* analysis—the balancing of privacy interests against the presumption of disclosure. To hold otherwise would be to require the trial court to undertake the needless formality of the balancing test when no claim of privilege could properly be advanced.

**4.** At oral argument counsel for the government relied heavily on three cases to support the Bureau's contention that it need not disclose even to the court whether the files in question exist and what they contain. We find all three inapposite.

*Department of State v. Washington Post Co.,* 456 U.S. 595, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982), involved attempts by a newspaper to determine if two putative Iranian nationals in fact were American citizens holding American passports. The Department of State refused to release this information under a FOIA request on the grounds that this would be an unwarranted invasion of privacy that might well endanger the lives of these two men. The *Post* case is distinct from that instant because the government did not simply make an unsupported claim of privilege. The district court's grant of summary judgment, which the Supreme Court affirmed, relied upon a number of detailed affidavits submitted to the trial court

the terms of the statute, *in camera* review of the actual documents is discretionary with the trial court, *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 224, 98 S.Ct. 2311, 2318, 57 L.Ed.2d 159 (1978), 5 U.S. C.A. § 552(a)(4)(B), as is resort to the *Vaughn* Index, *Stephenson,* 629 F.2d at 1145. But the obligation to find, by whichever means, an adequate factual basis to support the claim of privilege is *not* discretionary. It is a *sine qua non.*[4] *Stephenson,* 629 F.2d at 1144.

on the public record, 456 U.S. at 597 & n. 2, 102 S.Ct. at 1959 & n. 2, thus permitting the plaintiffs to respond in precisely the fashion anticipated by the *Vaughn-Phillippi* method. *Phillippi v. CIA,* 546 F.2d 1009, 1013 (D.C.Cir.1976). And certainly the Supreme Court reaffirmed the requirement of coming forward with evidence to support the claim of privilege. The Court held that when disclosure is sought and the government refuses, the "courts [rather than the agency] must determine whether release of the information would constitute a clearly unwarranted invasion of ... privacy." *Id.* 456 U.S. at 602, 102 S.Ct. at 1962.

In *Weinberger v. Catholic Action of Hawaii/Peace Education Project,* 454 U.S. 139, 102 S.Ct. 197, 70 L.Ed.2d 298 (1981), the Court considered whether the Navy was required to file a public environmental impact assessment of a proposed facility capable of storing nuclear missiles under the usual requirements of 42 U.S.C. § 4332(2)(C) (1976 ed. & Supp. IV). While the Supreme Court held that the Navy need not make a public disclosure, due to the national security-based Exemption 1 of the FOIA, it is clear that the Navy did proffer evidence sufficient to permit the trial court to conclude that the Navy had complied with the statute "to the fullest extent possible." *Id.* at 142, 102 S.Ct. at 201. Further, there is nothing in either the *Post* case or in *Catholic Action* that even arguably derogates the holdings in cases like *Vaughn, Phillippi,* or *Stephenson* that assign to the courts the obligation to determine independently the legitimacy of a claim of privilege based upon the government's proffer of evidence. *See, Rose,* 425 U.S. at 379–80, 96 S.Ct. at 1607–08; *Robbins Tire,* 437 U.S. at 235–36, 98 S.Ct. at 2323–324.

Finally, the government refers us to *Antonelli v. FBI,* 721 F.2d 615 (7th Cir.1983), *cert. denied,* 467 U.S. 1210, 104 S.Ct. 2399, 81 L.Ed.2d 355 (1984). That case involved a federal prisoner who sought the FBI files on several of his cohorts. The FBI declined to affirm or deny the existence of the files citing, *inter alia,* Exemptions 6 and 7(C) of the FOIA. The *Antonelli* court held that it would not apply the *Vaughn* requirement to cases of "nonconsensual third party requests where the requesting party has

## 1. *In Camera* Review.

■ If the court elects to satisfy this requirement by means of *in camera* review, then *a priori* the government must, at a minimum, tell the court whether the documents in dispute exist. Once that is done, the statute envisions an activist role for the trial court. It must take either of two alternate steps:

> in instances where it is determined that records do exist, the District Court must do something more to assure itself of the factual basis and bona fides of the agency's claim of exemption than rely solely upon an affidavit.... In situations where records do not exist, affidavits are probably not only sufficient but possibly the best method of verification. However, once it is established that records and documents are in the possession of the governmental agency, more is required.... such as sanitized indexing, random or representative sampling in camera with the record sealed for review, oral testimony or combinations thereof [which would] more fully provide an accurate basis for decision.

*Stephenson,* 629 F.2d at 1145–46; *Currie,* 704 F.2d at 530–31, *see also, Rose,* 425 U.S. at 379–80, 96 S.Ct. at 1607–08 ("No court

has yet seen the [contested information], and the Court of Appeals was therefore correct in holding that the function of examination *must* be discharged in the first instance by the *District Court.*") (emphasis supplied). Failure of a trial court to undertake this probing and exacting review constitutes an erroneous default of its obligations under the statute and requires a vacation of summary judgment and a remand to develop an adequate factual basis. *Stephenson,* 629 F.2d at 1146.

## 2. The *Vaughn* Index.

■ As we noted in *Currie, in camera* review will usually not be wholly satisfactory for two reasons: 1) without the "controverting illumination" and focus attendant on the adversary process, merely presenting to a trial court for review hundreds or thousands of pages of documents is so burdensome as to waste judicial resources and to make such review ineffectual, 704 F.2d at 530–31; and 2) it tends seriously to erode the working of our adversarial system of dispute resolution. *Vaughn v. Rosen,* 484 F.2d 820, 824–25 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 1564 (1974). These twin problems are often "compounded at the appellate level." 484 F.Supp. at

identified no public interest in disclosure." *Id.* at 617.

We recognize that the factual posture of *Antonelli* and the instant case are quite close (indeed, at oral argument counsel for appellant conceded that the two are virtually indistinguishable). We note, however, that even in *Antonelli* the court held that "[t]he agency still must meet its threshold burden of showing why the requested information is exempt from disclosure." *Id.* at 619. The question, accordingly, is how extensive must that threshold showing be in order to meet the burden?

In *Antonelli* this was accomplished by means of an affidavit submitted to the trial court. *Id.* at 618. The government argues that the affidavit submitted was little more than an *ipse dixit* assertion of privilege; it invites us to relax the standard even more and not require the "mere formality" of a statement when, as *Antonelli* suggests, that statement is nothing more than a bald assertion. The government also invites us to follow the Seventh Circuit's reasoning that

the FBI only need go beyond this assertion if the plaintiff can "identif[y] some public interest to be served by disclosing the information." *Id.* at 619. We decline both invitations. With all respect due our colleagues on the Seventh Circuit, we believe that this reasoning is contrary to the intent of Congress and further is contrary to our case law. For the reasons we set forth in Footnote 3, this method puts the cart before the horse. The government must first offer evidence, either publicly or *in camera,* to show that there is a legitimate claim of privilege. *Then* the court performs the balancing of which *Antonelli* speaks. To hold otherwise, we think, reassigns the burden of proof to the plaintiff—plainly contrary to the unambiguous terms of the statute. 5 U.S.C.A. § 552(a)(4)(B). It also renders null the statute's requirement, *id.,* that trial court review be *de novo,* which we interpret to require more than simple acquiescence in the government's wish not to disclose. To the extent that *Antonelli* is at odds with our holding today it retains no validity within this Circuit.

825. Accordingly, *in camera* review "is to be utilized in only the rare case such as ... [when] the disputed documents are relatively brief, few in number, and where there are few claimed exemptions." *Currie,* 704 F.2d at 531. The *Vaughn* Index is thus to be preferred.

In *Vaughn* the court recognized that assertions of privilege under FOIA, because the plaintiff is denied access to the very information he needs to prove his entitlement to release, tend to "seriously distort[ ] the traditional adversary nature of our legal system's form of dispute resolution" because "the facts relevant to a dispute are [not] ... equally available to adverse parties." 484 F.Supp. at 824. *In camera* review is not wholly satisfactory because it "is necessarily conducted without benefit of criticism and illumination by a party with the actual interest in forcing disclosure." *Id.* at 825. The District of Columbia Circuit offered a better way: an agency could "formulat[e] a system of itemizing and indexing that would correlate statements made in the Government's refusal justification with the actual portions of the document." *Id.* at 827. This would provide opposing counsel with at least a limited opportunity to focus and controvert the real issues, and hence would make for more effective court review. *See, Currie,* 704 F.2d at 532–33 (Kravitch, J., concurring).

While we earlier considered and approved use of the *Vaughn* Index, we have not until today been called upon to consider the more particularized problem posed by situations where even the acknowledgment that certain information exists is, in and of itself, a violation of the privacy provisions of the Act. In the government's jargon this is called "Glomarization," derived from a request for information concerning the putatively covert operations of the ship HUGHES GLOMAR EXPLORER, adjudicated in *Phillippi v. Central Intelligence Agency,* 546 F.2d 1009 (D.C.Cir.1976). Absent modification, the *Vaughn* Index could

not be used in such cases because to avoid a breach of confidentiality only *in camera* review could be undertaken. This had the effect of shutting out plaintiff's counsel. *Id.* at 1013.

■ The *Phillippi* court found this less than satisfactory and directed the trial courts to attempt to meld the competing *Vaughn* and *in camera* approaches by requiring an agency claiming privilege:

> to provide a public affidavit explaining in as much detail as is possible the basis for its claim that it can be required neither to confirm nor to deny the existence of the requested records. The Agency's arguments should then be subject to testing by appellant, who should be allowed to seek appropriate discovery when necessary to clarify the Agency's position or to identify the procedures by which that position was established. Only after the issues have been identified by this process should the District Court, if necessary, consider arguments or information which the Agency is unable to make public.

*Id.* at 1013, *accord, Lame v. United States Department of Justice,* 654 F.2d 917, 921–22 (3d Cir.1981). We find this the better approach. Before resorting to the imperfect method of *in camera* review, "the District Court should attempt to create as complete a public record as is possible." *Phillippi,* 546 F.2d at 1013. In so doing, the trial courts may achieve the best balance between the legitimate public or private considerations suggesting privilege and the public interest in full and open access to government records so strongly endorsed by Congress. Further, the integrity of the adversary system may be, for the most part, preserved by this means.

In those rare cases where information is of such sensitive nature that even *Phillippi* 's requirement of a public colloquy as to why admitting the existence of the document would be too much, then "the in camera inspection of a more detailed affi-

davit *must* be resorted to." *Ferri v. Bell,* 645 F.2d 1213, 1223 (3d Cir.1981) (emphasis supplied); *Phillippi,* 546 F.2d at 1013; *see generally, Stephenson,* 629 F.2d at 1145–46.

### III.

■ From the foregoing discussion of the district court's obligations under the statute, it follows ineluctably that the inquiry below was simply and completely inadequate as a matter of law.[5] The district court required no *Vaughn* Index, no *in camera* inspection, no hearing, not even the filing of an affidavit to support the government's claim. The effect was to give the government an absolute, unchecked veto over what it would or would not divulge, in clear violation of the provisions of the statute. It diverted to the agency the court's obligation to decide these questions according to law. This was error and requires REVERSAL of the grant of summary judgment and a REMAND FOR A TRIAL during which the FBI will be required to make an adequate showing of privilege to be considered *de novo* by the trial court. In reaching this result we intimate no suggestion in any respect as to the merits of the underlying claim of privilege.

---

**5.** We note that the quantum of evidence presented below was significantly less, for example, than that produced in *Stephenson,* 629 F.2d at 1142 n. 5, which we there found insufficient to constitute an adequate factual basis.